United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 4, 2003**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 01-41161

_____

MARIA O. VASQUEZ, ET AL.,

Plaintiffs-Appellants,

ALEJANDRA MARLEN R. DELUNA,

Intervenor Plaintiff-Appellant,

VERSUS

BRIDGESTONE/FIRESTONE, INC., ET AL.,

Defendants-Inervenor

Defendants-                                                                Appellees.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

M ARIA O. V ASQUEZ, ET AL .,

Plaintiffs-Appellants,

A LEJANDRA M ARLEN R. D ELUNA ,

Intervenor Plaintiff-Appellant,

D ANA R. A LLISON , ET AL .,

Appellants,

VERSUS

B RIDGESTONE /F IRESTONE , I NC ., ET AL .

Defendants-Appellees,

_____

Appeals from the United States District Court
for the Eastern District of Texas

_____

Before GARWOOD, SMITH, and BARKSDALE,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:

   Car crash victims' survivors sued the tire manufacturer and other defendants in state court. After defendants removed to federal court, the district court dismissed on grounds of *forum non conveniens* ("f.n.c."), finding Mexico to be the more convenient forum. The court also enjoined plaintiffs from pursuing

any claim against defendants in Texas state court or federal court. We vacate the f.n.c. dismissal so that a return jurisdiction clause may be added, and we order that the injunction be modified to conform to the Anti-Injunction Act, 28 U.S.C. § 2283. The dismissal and injunction are otherwise free of error.

I.

This action arises from an automobile accident in the state of Nuevo Leon, Mexico, that killed six passengers, all Mexican citizens. Plaintiffs and intervenors, who are family members of the decedents, allege that the vehicle and one of its tires were defective, that the vehicle was improperly maintained, and that the driver was careless. Plaintiffs first filed wrongful death and survival claims against defendants Bridgestone/Firestone, Inc. ("Bridgestone"), General Motors Corporation ("General Motors"), Lucent Technologies, Inc., and Lucent Technologies Maquiladoras, Inc.,[1] in federal district court in Brownsville, Texas ("*Vasquez I*"). That suit was dismissed for lack of diversity jurisdiction.

The instant case ("*Vasquez II*") was filed in Orange County, Texas, and removed to federal district court in Beaumont, Texas. That court dismissed on grounds of f.n.c., concluding that the dispute should be heard in Mexico. The location of the accident, the sources of proof, plaintiffs' home, and the lack of local interest were factors that the court found favored Mexico. The court also determined that Mexican law would govern. The court dismissed with prejudice, noting in its memorandum opinion that "[a] judgment of dismissal under *forum non conveniens* here

should act to preclude a future lawsuit brought elsewhere in this country."

Before the court dismissed *Vasquez II*, plaintiffs filed a separate state court suit in Cameron County, Texas ("*Vasquez III*"). They initially were represented by different counsel before the dismissal of *Vasquez II*; at that time, counsel of record filed an amended petition and a petition in intervention on plaintiffs' behalf. *Vasquez III* was removed to federal court and ultimately dismissed by stipulation.[2]

Following the f.n.c. dismissal in *Vasquez II*, plaintiffs also sued in Webb County, Texas. This suit, *Vasquez IV*, named five defendants not named in the three previous suits: Bridgestone Corporation, Bridgestone/Firestone de Mexico, S.A., Rudolph Miles and Sons, Inc., Dicex International, Inc., and the driver of the vehicle, Villanueva. *Vasquez IV* also included two new plaintiffs, the parents of one of the deceased crash victims, Ivonne Juarez. After defendants removed *Vasquez IV* to federal court, the *Vasquez II* court *sua sponte* issued a temporary restraining order barring plaintiffs and their attorneys from arguing their pending motion to remand and from prosecuting any new suits.

The *Vasquez II* court later issued a permanent injunction that prohibited

> plaintiffs, their attorneys, their agents, and all persons acting on behalf of plaintiffs, or in concert with any and all of the plaintiffs or their attorneys from prosecuting, filing, or pursuing any suit

---

[1] Lucent Technologies, Inc., and Lucent Technologies Maquiladoras, Inc., have since settled and are no longer parties to this appeal.

[2] The *Vasquez II* court found that *Vasquez III* was "an attempt by the Plaintiffs to relitigate this case."

or case or cause of action against the defendants herein in any district court of the State of Texas, and any United States District Court in the State of Texas against the said movants.

The court reasoned that the All Writs Act, 28 U.S.C. § 1651(a), permitted it to protect the finality of its f.n.c. dismissal. Plaintiffs argue that the injunction violates the Anti-Injunction Act, specifically that it does not fall under the Act's relitigation exception. This appeal consolidates plaintiffs' challenge to the *Vasquez II* court's dismissal and the permanent injunction.

## II.

Federal courts apply the federal version of f.n.c. in resolving a motion to dismiss where the alternative forum is a foreign tribunal. *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993). We review an f.n.c. dismissal for abuse of discretion. *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379 (5th Cir. 2002), *petition for cert. filed*, 71 U.S.L.W. 3489 (Jan. 7, 2003) (No. 02-1044). To obtain an f.n.c. dismissal, a party must demonstrate (1) the existence of an available and adequate alternative forum and (2) that the balance of relevant private and public interest factors favor dismissal. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221-22 (5th Cir. 2000). Under federal f.n.c. principles, the court properly found that Mexico is the more convenient forum.

## A.

An alternative forum is considered available if the entire case and all parties can come within its jurisdiction.[3] The district court

found that defendants' stipulation to submit to a Mexican court's jurisdiction in the state of Nuevo Leon made Mexico an available forum. Plaintiffs now argue that because Mexican federal law provides greater damages than does the law of Nuevo Leon, defendants should have been required to submit to the jurisdiction of a Mexican federal court in Mexico City. Forum availability and adequacy are separate inquiries, however, so we reject plaintiffs' attempt to bootstrap the two. Indeed, plaintiffs do not dispute that an available Mexican forum exists in the courts of Nuevo Leon.

An alternative forum is adequate if "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Gonzalez*, 301 F.3d at 379-80 (citation and internal quotation marks omitted). In *Gonzalez*, we rejected the plaintiffs' contention that a foreign jurisdiction's decision to limit damages and limit the availability of strict liabilitySSeven to the point at which the lawsuit ceases to become economically viableSSsomehow renders that jurisdiction inadequate. *Id*. at 381. Importantly, *Gonzalez* also involved Mexican plaintiffs suing an American vehicle manufacturer over a car accident in Mexico. *Id*. at 383. The fact that Mexico provides a wrongful death cause of action, albeit with severe damage caps,[4] makes the country an

_____

[3] *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1165 (5th Cir. (continued...)

[3](...continued)
1987) (en banc), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989).

[4] Defendants' expert stated that Nuevo Leon law limits wrongful death liability to approximately (continued...)

4

adequate forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).

### B.

Once a court determines that there is an adequate alternative forum, it must balance the relevant private and public interest factors. *Id.* at 254-55. Private interest factors include

> the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; the possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*McLennan v. Am. Eurocopter Corp., Inc.*, 245 F.3d 403, 424 (5th Cir. 2001) (internal quotation marks and citation omitted). In *Piper*, the Court stated that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public factors clearly point towards trial in the alternative forum." 454 U.S. at 255. Still, the district court determined, consistently with *Piper*, that because plaintiffs are residents of a foreign country, their forum choice should be accorded less deference. *Id.* at 255-56.

Plaintiffs contend the court erred, because a treaty between the United States and Mexico, the International Covenant of Civil and Political Rights, entitles Mexican plaintiffs to the same deference as American citizens,

only with the understanding that suing in the United States may be less convenient.[5] Article 14(1) of the treaty states, *inter alia*: "All persons shall be equal before the courts and tribunals. In the determination of . . . rights and obligations in a suit at law, everyone shall be entitled to a fair and public hearing by a competent, independent, and impartial tribunal."[6] We need not decide this issue, however, because the private and public factors "clearly point towards" trial in Mexico.[7] *Piper*, 454 U.S. at 255.

Analyzing the private factors, the court correctly determined that trial should be held in Mexico. The court emphasized that plaintiffs, the driver of the vehicle, and all decedents are Mexican citizens. In addition, the vehicle and tires were manufactured, purchased, and main-

---

[4](...continued)
$5,700 plus an unspecified amount of "moral damages" designed to compensate for humiliation, injury to reputation, and mental anguish.

[5] Plaintiffs cite *In re Bridgestone/Firestone, Inc. Tires Products Liability Litig.*, 190 F. Supp. 2d 1125, 1136 (S.D. Ind. 2002), which held that the Treaty of Peace, Friendship, Navigation and Commerce between the United States and Venezuela gives "expatriate U.S. nationals and treaty nationals residing in their home countries . . . the same preference of their choice of forum, with the consideration that suing in a United States forum while residing in a foreign country is less likely to be convenient." Plaintiffs, however, invoke the International Covenant on Civil and Political Rights, a separate treaty, so it is hard to see how *In re Bridgestone/Firestone* is relevant.

[6] International Covenant on Civil and Political Rights, Dec. 16, 1966, art. 14(1), 999 U.N.T.S. 171.

[7] *See James v. Gulf Int'l Marine Corp.*, 777 F.2d 193, 194 n.2 (5th Cir. 1985) (stating that even where courts have interpreted forum-access treaty provisions broadly, they have "still dismissed suits where the balance weighs in favor of another forum").

tained in Mexico. The vehicle had a Mexican owner, and the trip took place entirely in Mexico. All the physical evidence and medical reports are in Mexico; conducting trial in the United States would require the translation of numerous reports and witness testimony. Federal courts have no power of compulsory process over Mexican citizens, including the surviving driver and passenger, police, and mechanics who serviced and maintained the vehicle.

Plaintiffs point out that documents relating to the design and manufacture of the vehicle's tires are located in the United States and must be translated into Spanish. They also aver that the court's refusal to permit additional discovery prevented them from demonstrating the exact role of General Motors and Bridgestone in designing and fabricating their products.[8] Yet, even without the aid of additional discovery, plaintiffs argued in the district court that the design information is located in the United States, so we do not see how they have been prejudiced.[9]

Assuming *arguendo* that all information relating to the design and manufacture of the tires and vehicle is located in the United States, we still find the court's analysis correct. The tires and vehicle were manufactured and sold in Mexico; the vehicle's servicing records and the driver's recordsSSboth vital to plaintiffs' alternative theories of liabilitySSare also located there.

### C.

Plaintiffs maintain that the court erred in applying the relevant public f.n.c. factors, which are

administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*McLennan*, 245 F.3d at 424 (internal quotation marks and citation omitted). The court determined these factors favor trial in Mexico, because the case would overburden its already overcrowded docket, Texas has little local interest in the outcome, and Mexican law should govern the controversy.

Plaintiffs assert the location of Bridgestone's main plant in Orange County, Texas,

---

[8] Again, plaintiffs' reliance on *In re Bridgestone/Firestone Tires Products Liability Litig.*, 190 F. Supp. 2d 1125, is problematic. Although, in that case, the multi-district litigation court denied the defendant's motion to dismiss on grounds of f.n.c., some of the vehicles and tires, unlike the situation in this case, were manufactured in the United States. *Id.* at 1139-40. More importantly, the suit involved traffic accidents in Colombia, not Mexico; that country's procedure rules would have required American deponents to travel there to ratify their testimony. *Id.* at 1138. Finally, the court believed that political unrest could make trial in Colombia difficult. *Id.* at 1143-44.

[9] *See HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 549 (5th Cir. 2000) (stat-
(continued...)

[9](...continued)
ing that a discovery ruling should be reversed only if the complaining party demonstrates that it was prejudiced by the ruling).

6

refutes the court's conclusion that there is little local interest. In fact, the plant that plaintiffs reference is not the company's principal place of business, nor does it even produce tires. Conversely, Mexico has an interest in protecting its own citizens from defective products acquired in Mexico and causing injury there.[10]

The linchpin of plaintiff's argumentSSthat the alleged wrongful act was the original design of the vehicle and tiresSSreaches back too far in the accident's causal chain. Identifying the situs of the wrongful conduct as an American designer's drawing board ignores the production, sale, and alleged failure of the product, which all occurred in Mexico. If accepted, plaintiffs' argument would curtail the rights of foreign governments to regulate their internal economies and threaten to engulf American courts with foreign claims, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). In addition, plaintiffs' attempt to place the alleged wrongful conduct in the United States ignores their own alternative liability theories that improper maintenance and careless driving caused the accident.

Plaintiffs are permitted to plead in the alternative. FED. R. CIV. P. 8(e)(2). For purposes of f.n.c., however, they cannot present only one of their multiple liability theories for the sole purpose of gaining a favorable forum.

For similar reasons, plaintiffs' contention that the court erred in its choice-of-law determination is unavailing.[11] A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Texas applies the "most significant relationship" test, *Gutierrez v. Collins*, 583 S.W.2d 312, 318-19 (Tex. 1979), which considers various contacts: the place where the injury occurred, the place where the injury causing conduct occurred, the parties' residence, and the place where the relationship, if any, between the parties is centered.[12]

Even if the design of the tires and vehicles is characterized as the conduct causing injury, the aggregate of other specific contacts favors application of Mexican law. As the court recognized, all the decedents and plaintiffs are citizens of Mexico, the accident and subsequent investigation took place in Mexico, and the vehicle and tires were manufactured and purchased there.

The most significant relationship test further requires that the specific contacts be evaluated in light of policy considerations. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414,

---

[10] *See Delgado v. Shell Oil Co.*, 231 F.3d 165, 181 (5th Cir. 2000) ("[T]hose foreign countries [where the plaintiffs hailed from and had suffered injury] obviously have an interest in protecting the rights and welfare of their citizens."); *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 804-05 (7th Cir. 1997) (noting that Indiana residents "have a mere passing interest" where a foreign plaintiff is injured in a foreign land); *Torreblanca de Aguilar v. Boeing Co.*, 806 F. Supp. 139, 144 (E.D. Tex. 1992) (stating that Mexico has a "paramount interest" in resolving claims brought by Mexican plaintiffs arising from an air crash in Mexico that was investigated by Mexican authorities).

[11] We review a court's choice-of-law determination *de novo. Spence v. Glock, Inc.*, 227 F.3d 308, 311 (5th Cir. 2000).

[12] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971).

421 (Tex. 1984). These considerations are

> (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971). A proper choice-of-law "achieve[s] the best possible accommodation" of both nations' policies. *Id.* cmt. f.

We are mindful of the disparate levels of wrongful death damages provided under Texas and Mexican law and the incentive for plaintiffs to sue in the United States. Given that all decedents and plaintiffs are Mexican, however, there is little justification for applying Texas law, which seeks to "protect[] the rights of its *citizens* to adequate compensation."[13] Were we to apply Texas law as a means of righting any perceived inequities of Mexican law, we would be undercutting Mexico's right to create a hospitable climate for investment.[14]

Uniformity, predictability, and accommodation of the competing policies of the two nations favor applying Mexican law.

### D.

There is no guarantee that Nuevo Leon will remain an available forum or that defendants will submit to its jurisdiction. A return jurisdiction clause remedies this concern by permitting parties to return to the dismissing court should the lawsuit become impossible in the foreign forum. The "failure to include a return jurisdiction clause in an f.n.c. dismissal constitutes a *per se* abuse of discretion." *Robinson v. TCI/US West Communications, Inc.*, 117 F.3d 900, 907-08 (5th Cir. 1997). As we said in *In re Air Crash Disaster*, 821 F.2d at 1166:

> If the district court decides that the [public and private interest factors] favor in a foreign forum, it must finally ensure that a plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice and that if the defendant obstructs such reinstatement in the alternative forum that the plaintiff may return to the American forum.

The court did not include a return jurisdiction clause in its dismissal order, so we vacate and remand with instructions that one be added.

---

[13] *See Trailways, Inc. v. Clark*, 794 S.W.2d 479, 486 (Tex. App.SSCorpus Christi 1990, writ denied) (emphasis added); *see also Baird v. Bell Helicopter Textron*, 491 F. Supp. 1129, 1150-51 (N.D. Tex. 1980).

[14] *See Gonzalez*, 301 F.3d at 381-82 ("In making this policy choice, the Mexican government (continued...)

---

[14](...continued) has resolved a trade-off among the competing objectives and costs of tort law, involving interests of victims, of consumers, of manufacturers, and of various other economic and cultural values. In resolving this trade-off, the Mexican people, through their duly-elected lawmakers, have decided to limit tort damages. . . .").

## III.

The district court halted plaintiffs' "judicial hopscotch" by invoking the All Writs Act, which authorizes federal courts "to issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. This power dovetails with the relitigation exception to the Anti-Injunction Act, which, although generally prohibiting federal courts from enjoining state proceedings, permits a court to enjoin a state court "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

The relitigation exception is grounded in principles of *res judicata* and collateral estoppel. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988). The test for the relitigation exception is the same test used to determine claim preclusion or *res judicata*: "(1) the parties in a later action must be identical to (or at least in privity with) the parties in a prior action; (2) the judgment in the prior action must have been rendered by a court of competent jurisdiction; (3) the prior action must have concluded with a final judgment on the merits; and (4) the same claim or cause of action must be involved in both suits." *Regions Bank v. Rivet*, 224 F.3d 483, 488 (5th Cir. 2000) (internal quotation marks and citation omitted); *N.Y. Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000). In *Next Level Communications LP v. DSC Communications Corp.*, 179 F.3d 244, 250 (5th Cir. 1999), we recognized that the relitigation exception also applies where issue preclusion, or collateral estoppel, exists.[15] The

district court sought to protect its f.n.c. dismissal——a judgment——so we must decide whether it is *res judicata* for purposes of the relitigation exception.

The permanent injunction prohibited plaintiffs and counsel from pursuing "any suit or cause of action against defendants" in any Texas state or federal court.[16] The district court determined that an f.n.c. dismissal is entitled to claim-preclusive effect as a final judgment on the merits, finding also that Texas state courts would apply the same choice-of-law rules and "virtually the same" f.n.c. test as a federal court. We conclude that an f.n.c. dismissal is not a decision on the merits, so we direct the court to modify its injunction to prevent plaintiffs from relitigating only the choice-of-law determination.

Plaintiffs contend the injunction is inappropriate because defendants failed to

---

[15] "Collateral estoppel exists where: (1) the issue at stake is identical to the one involved in the
(continued...)

[15](...continued)
prior action; (2) the issue was actually litigated in the prior action; (3) the determination of the issue in the prior action was a necessary part of the judgment in that earlier action; and (4) the legal standard used to assess the issue is the same in both proceedings." *Next Level*, 179 F.3d at 250 (citations and internal quotation marks omitted).

[16] The permanent injunction order broadly forbids plaintiffs from pursuing "any suit or cause of action" against defendants; only the memorandum opinion and temporary restraining order limit relitigation of claims "arising from the August 12, 1999 accident." Plaintiffs do not attack the permanent injunction order on this technicality, however, so neither will we. *See Royal Ins. Co. v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1294 (5th Cir. 1992) ("We thus reject appellants' construction of the declaratory judgment as artificial and unnecessarily formalistic.").

demonstrate imminent harm or the lack of an adequate remedy. *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57 (1975). Plaintiffs argue that pleas of *res judicata*, where appropriate, are sufficient to protect the *Vasquez II* court's dismissal. The court's finding that *Vasquez IV* was plaintiffs' second attempt to relitigate its "final judgment" was sufficient, however, to enjoin further litigation. *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 721 (5th Cir. 1990); *Next Level*, 179 F.3d at 257.

In *Quintero*, 914 F.2d at 720-21, we affirmed a decision to enforce the principles of *res judicata* in the first instance by enjoining state court relitigation of a choice-of-law determination. Though we conclude that the injunction impermissibly prohibits plaintiffs from suing in state court, the district court did not err by invoking the relitigation exception, which seeks to prevent the wasteful and harassing revisiting of previously decided matters.

### A.

At least where there is claim preclusion, the relitigation exception applies only to the actual parties of the first proceeding and those in privity with them. *Rivet*, 224 F.3d at 488. The permanent injunction designated "plaintiffs, their attorneys, their agents, and all persons acting on behalf of plaintiffs, or in concert with any and all of the plaintiffs or their attorneys," as well as the moving defendants. *Vasquez IV* contains two new plaintiffsSSthe parents of decedent Ivonne JuarezSSand five new defendants not named in *Vasquez II*.

Privity has been described as nothing more than a "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Southwest Airlines, Inc. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977) (citation omitted). Privity exists where, for example, a party's claim is derivative of the original party's claim.[17]

Ivonne Juarez's estate representative, Jessica Juarez, is a party in *Vasquez II*, but her parents did not join the litigation until the advent of *Vasquez IV*. Given that both seek wrongful death claims on behalf of Ivonne Juarez and are represented by the same counsel, they are in privity with one another.

Our conclusion is bolstered by the fact that plaintiffs' counsel named Juarez's parents as parties in two motions filed in *Vasquez II*; the parents also submitted a list of all companies sued previously to the *Vasquez* II court. The court's reference to all parties acting "on behalf of" or "in concert with" plaintiffs means that Juarez's parents were among those properly enjoined.

The five new defendants, on the other hand, are not proper subjects of the injunction. The court enjoined suit against only the moving defendants and did not make any findings as to

---

[17] *See Terrell v. DeConna*, 877 F.2d 1267, 1270-73 (5th Cir. 1989) (holding that a wife bringing a loss-of-consortium claim cannot relitigate issues that had been decided in her husband's personal injury suit); *Meador v. Oryz Energy Co.*, 87 F. Supp. 2d 658, 665 (E.D. Tex. 2000) (finding that where two estate beneficiaries were "in privity with their common ancestor for a claim belonging to that ancestor, it follows that they are also in privity with each other").

privity. *Quintero*, 914 F.2d at 721.[18] Though it is arguable that plaintiffs could have sued these five defendants in the original action, the relitigation exception, as noted, requires that the claims *actually be* litigated in the first proceeding. *Hatcher*, 152 F.3d at 544. Even if the injunction otherwise falls within the relitigation exception, its express terms prevent enjoining litigation against non-*Vasquez II* defendants.

### B.

An f.n.c. dismissal, based on a doctrine "of procedure rather than of substance," *Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994), does not resolve the substantive merits and therefore falls outside the relitigation exception.[19] In *Chick Kam Choo*, 486 U.S. at 142-43, a Singapore resident brought maritime and Texas state law claims in federal court. In granting defendant's motion to dismiss on grounds of f.n.c., the district court found that Singapore law governed. The court enjoined the plaintiff after she refiled the Texas state law claim and brought a new claim under Singapore law in Texas state court.

The Supreme Court vacated the injunction so far as it prohibited litigating the Singapore law claim, noting that the f.n.c. dismissal "did not resolve the merits of this claim." *Id.* at 148. In other words, instead of the substantive merits, "the only issue decided by the District Court was that petitioner's claims should be dismissed under the federal *forum non conveniens* doctrine." *Id.*

Rule 41(b) states that an order of dismissal "operates as an adjudication on the merits" unless the court states otherwise or the dismissal is for lack of jurisdiction, improper venue, or failure to join a party under Rule 19. FED. R. CIV. P. 41(b).[20] Because an f.n.c. dismissal involves the court's "declin[ing] to exercise its jurisdiction, even though the court has jurisdiction and venue," *Piper*, 454 U.S. at 250, it does fall under one of the three exceptionsSS*lack* of jurisdiction, *lack* of venue,[21] or failure to join a party. Nor did the

---

[18] *See Hatcher v. Avis Rent-A-Car Sys., Inc.*, 152 F.3d 540, 544 (5th Cir. 1998) ("Since these individuals were not named in the federal court action, no claim against them was actually decided by the federal court.").

[19] *Baris v. Sulpicio Lines, Inc.*, 74 F.3d 567, 572-73 (5th Cir.), *vacated*, 74 F.3d 575 (1996), *reh'g en banc*, 101 F.3d 367 (1996). The panel opinion in *Baris* was vacated; an equally divided en banc court affirmed the court's enjoining of relitigation following the district court's f.n.c. dismissal.

[20] FED. R. CIV. P. 41(b) states:

For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

[21] Although the Court has observed that f.n.c. is a "supervening venue provision," *Am. Dredging*, 510 U.S. at 453, there is a long-standing distinction between a 28 U.S.C. § 1404(a) f.n.c. transfer and an "improper forum," *Tel-Phonic Servs. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1141 (5th Cir. 1992). This, we feel, warrants a distinction between an

(continued...)

district court state that the dismissal was involuntary; the court instead stated that by dismissing with prejudice, it sought to preclude plaintiffs from relitigating their claims "elsewhere in this country."

Previously, rule 41(b)'s effect regarding claim preclusion was questioned because of the limited enumerated exceptions to its default rule that judgments generally be deemed "on the merits." 18 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4435, at 140 (2d ed. 2002). Many types of dismissals "do not seem to fall within the categories 'provided for in this rule' and yet clearly should notSSand do notSSoperate as an adjudication that precludes a second action on the same claim." *Id.*

In *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), the Court reigned in rule 41(b) as a determinant of claim-preclusion, recognizing that the meaning of "judgment on the merits" has changed over time and "has come to be applied to some judgments" (like the instant district court's f.n.c. dismissal) "that do *not* pass upon the merits of a claim and hence do not (in many jurisdictions) entail claim-preclusive effect." *Id.* at 502. The Court determined that rule 41(b) primarily "relates to the dismissing court itself." That is, an "adjudication on the merits" bars refiling of the same claim in the same court but does not establish claim preclusion. *Id.* at 505-06. *Semtek* held that when a diversity court dismisses a claim on state substantive law grounds, the preclusive effect of the judgment is measured not by rule 41(b), but by the preclusion law of the state in which the court sits.

The district court, although exercising diversity jurisdiction, dismissed on federal procedural grounds, thus distinguishing *Semtek*. And despite rule 41(b)'s enabling the court to prevent relitigation of federal f.n.c. principles in a Texas federal court,[22] we cannot, after *Semtek*, look to the rule as a guide to the judgment's claim-preclusive effect elsewhere. *Semtek* states that rule 41(b) "would be a highly peculiar context in which to announce a federally prescribed rule on the complex question of claim preclusion, saying in effect, 'All federal dismissals (with three specified exceptions) preclude suit elsewhere, unless the court otherwise specifies.'" *Id.* at 503. Also, permitting a rule of civil procedure to control the effect given a federal judgment by a state court arguably violates the jurisdictional limitation of the Rules Enabling Act.[23] *Id.*

Instead, we look to the longstanding rule that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity." *Id.* at 508 (citation omitted). Fortunately, *Chick Kam Choo*,

---

[21](...continued)
f.n.c. dismissal and an "improper venue" dismissal.

[22] Our statement in *Quintero* that an f.n.c. dismissal may be designated "'with prejudice,' so long as the plaintiff's ability to reinstate the action is otherwise adequately protected," means only that a court may prevent relitigation of the *federal* f.n.c. issue. 914 F.2d at 722. So far as *Quintero* may be read as permitting an f.n.c. dismissal to be afforded a broader preclusive effect, that case dealt only with an injunction barring relitigation of a choice-of-law determination, so it is *dictum*. *Id.*

[23] The Rules Enabling Act states that the rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).

which makes no mention of rule 41, reveals that an f.n.c. dismissal is not a claim-preclusive judgment.

*Chick Kam Choo* characterizes a dismissal based on federal f.n.c. principles as one not resolving the underlying substantive issues. 486 U.S. at 148. The principle of f.n.c., as "nothing more or less than a supervening venue provision," *Am. Dredging*, 510 U.S. at 453, contemplates resolving the merits in another forum, negating the possibility of claim-preclusion. Although an f.n.c. dismissal designated on the merits may bar reconsideration of the claims in another Texas federal court,[24] it cannot forever bar the controversy from all American courts. To conclude otherwise would prevent states from deciding the openness of their courts.[25]

Defendants seek to distinguish *Chick Kam Choo* because Texas f.n.c. law has changed;

---

[24] Even where a court enters a final f.n.c. dismissal, it may reconsider the issue if there is a change in the material facts underlying the judgment. *Exxon Corp. v. Chick Kam Choo*, 817 F.3d 307, 312 (5th Cir. 1987), *rev'd on other grounds*, 486 U.S. 140 (1988).

[25] *Chick Kam Choo*, 486 U.S. at 148-49 ("Federal *forum non conveniens* principles simply cannot determine whether Texas courts, which operate under a broad "open-courts" mandate, would consider themselves an appropriate forum for petitioner's lawsuit . . . . [W]hether the Texas *state* courts are an appropriate forum for petitioner's Singapore law claims has not yet been litigated."); *see also Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 848 (5th Cir. 1990) ("[*Chick Kam Choo*] held that a federal *forum non conveniens* dismissal was not *per se* necessarily *res judicata* of the appropriateness of state courts as a forum for the same litigation . . . .").

they argue that today Texas would apply the same or even a less deferential standard than the federal f.n.c. standard, permitting application of the relitigation exception. In contrast to the situation in *Semtek*, where the dismissal's preclusive effect was dictated by state preclusion law*,* defendants seek to have the preclusive effect of the f.n.c. dismissal turn on *differences* between federal and state f.n.c. law.

This would have the undesirable effect of varying the preclusive effect accorded a federal f.n.c. dismissal based on the law of the interpreting state. Instead, the type of federal common law applied to a federal procedural dismissal, unlike a dismissal based on state substantive law, does not incorporate state law. *Chick Kam Choo*, 531 U.S. at 508*.* The threats of "forum-shopping . . . and . . . inequitable administration of the laws" that *Erie* seeks to avoid, *Hanna v. Plumer*, 380 U.S. 460, 468 (1965), are non-existent where a dismissal is based on federal procedure. *Chick Kam Choo*'s observation regarding the differences between the Texas "open courts" policy and federal f.n.c. law serves only to emphasize the likelihood of a different result in state court.

### C.

Whereas the f.n.c. dismissal did not decide the substantive merits of plaintiffs' claims, the court's choice of Mexican law did. This is somewhat counter-intuitive, given that a choice-of-law determination is a necessary part of an f.n.c. dismissal. *Piper*, 454 U.S. at 245. The result is that plaintiffs are not barred from pursuing their claims in Texas state court so long as they bring only Mexican law claims.

Key to *Chick Kam Choo's* reasoning is that a choice-of-law determination made in

13

furtherance of an f.n.c. dismissal is a decision on the merits. Regarding the Texas law claims previously dismissed in federal court on grounds of f.n.c., *Chick Kam Choo* stated that the "validity of the claim was adjudicated" once the lower court determined that Singapore law governed. *Chick Kam Choo*, 486 U.S. at 150. In other words, the district court's choice-of-law determination "necessarily precludes the application of Texas law, [so] an injunction preventing relitigation of that issue in state court is within the scope of the relitigation exception to the Anti-Injunction Act."[26] *Id.*; *see also Quintero*, 914 F.2d at 722.

Following the reasoning of *Chick Kam Choo*, the district court's decision to apply Mexican law adjudicated plaintiffs' Texas law claims. Even if the other f.n.c. factors were found to favor Texas over Mexico, plaintiffs' Texas law claims would be unsustainable in light of the court's adverse choice-of-law determination. As the district court observed, it actually rendered *two* judgments: (1) Mexican law governs the controversy; and (2) the f.n.c. factors favor dismissal and trial in Mexico. Under *Chick Kam Choo*, only the former is a decision on the merits.

Even if a choice-of-law determination were not considered a judgment separate from the f.n.c. dismissal, issue preclusion would make it a proper subject of the relitigation exception. *Next Level*, 179 F.3d at 249-50. The choice-of-law issue was "distinctly put in issue, litigated, and determined in the former action." *Brister v. A.W.I., Inc.*, 946 F.2d 350, 354 (5th Cir. 1991) (citation omitted). As noted, federal courts apply the same choice-of-law analysis as the state in which they sit. *Klaxon*, 313 U.S. at 497. Also, issue preclusion does not require that the accompanying judgmentSSin this case the f.n.c. dismissalSSbe adjudicated on the merits. *Acree v. Air Line Pilots Ass'n*, 390 F.2d 199, 203 (5th Cir. 1968). Consistent, however, with *Chick Kam Choo*, our finding that the choice-of-law determination actually adjudicated the Texas state law claims, thereby triggering claim preclusion, prevents application of the injunction beyond the plaintiffs and those in privity.[27]

For the foregoing reasons, we VACATE the f.n.c. dismissal and permanent injunction and REMAND with instruction to add a return jurisdiction clause to the judgment and modify the injunction enjoining plaintiffs from relitigating the court's choice-of-law determination.

---

[26] In maritime cases, choice-of-law is a determination on the merits and may be treated as the equivalent of a motion for summary judgment. *Quintero*, 914 F.2d at 721; *Nunez-Lozano v. Rederi*, 634 F.2d 135, 137 (5th Cir. Unit A 1980). No reason comes to mind for limiting this principle to maritime cases.

[27] Unlike claim preclusion, collateral estoppel does not always require complete identification of parties. *Next Level*, 179 F.3d at 255-56; *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1273 (5th Cir. 1990).

14