# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 25, 2014

No. 13-50106

Lyle W. Cayce
Clerk

ROYAL TEN CATE USA, INCORPORATED, a Delaware corporation;
KONINKLIJKE TEN CATE N.V., a Dutch company; TEN CATE UK,
LIMITED,

Plaintiffs - Appellants

v.

TT INVESTORS, LIMITED, formally known as Tiger Turf International
Limited, a New Zealand company; TTAH, LIMITED, formerly known as
Tiger Turf Americas Holdings Limited, a New Zealand company,

Defendants - Appellees

Appeal from the United States District Court
of the Western District of Texas
USDC No. 1:11-CV-1057

Before KING, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellants Royal Ten Cate challenge the district court's dismissal under the doctrine of forum non conveniens. For the following reasons, we VACATE and REMAND for further proceedings.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-50106

## FACTS AND PROCEEDINGS

In 2009, Koninklijke Ten Cate N.V., a Dutch textile manufacture with headquarters in the Netherlands, along with two of its subsidiaries, (1) Royal Ten Cate USA, Inc., a Delaware company with principle place of business in Georgia, and (2) Ten Cate UK Limited, a British corporation (collectively "Ten Cate"), entered into an acquisition agreement with two New Zealand companies, TTAH Limited ("TTAH") and TT Investors ("TTI") (collectively "TigerTurf"). In the agreement, Ten Cate agreed to purchase from the TigerTurf Group shares in various operating subsidiaries. TTI agreed to sell its stock in its New Zealand and Australian operating subsidiaries to Koninklijke Ten Cate, and its shares in its UK operating subsidiary to Ten Cate UK. TTAH agreed to sell its shares in its American subsidiary— TigerSports Americas Inc. ("Tiger Sports")—to Royal Ten Cate USA. TigerSports Americas is headquarted in Austin, Texas. The agreement was negotiated and executed in New Zealand and is governed by New Zealand law. The agreement provided that the shares in the operating subsidiaries would be sold in three parcels to the relevant Ten Cate party.

Ten Cate purchased the first two parcels, but when the TigerTurf Group tried to exercise their option to sell the third parcel to Ten Cate in spring 2011, Ten Cate asserted that it was entitled to offset the price of the third parcel against the losses that Ten Cate claimed it had suffered as a result of the TigerTurf Group's alleged breach of warranties in the acquisition agreement. Ten Cate argued that the TigerTurf Group breached three warranties in the acquisition agreement by failing to properly disclose two types of information.

First, Ten Cate alleged that by failing to disclose various claims by Tiger Sports customers in North America that Tiger Sports artificial field turf was subpar, the TigerTurf Group breached warranties that Tiger Sports had (a) no undisclosed contingent liabilities, and (b) was not in breach of any material

2

contract or agreement. Second, Ten Cate alleged that the TigerTurf Group provided Ten Cate with inaccurate EBITDA[1] information for all four of the purchased operating subsidiaries in violation of a warranty that all information provided was accurate. Because Section 30 of the acquisition agreement required an expert proceeding in New Zealand to determine whether Ten Cate's breach of warranty claims had a reasonable chance of success, Ten Cate initiated an expert proceeding in New Zealand in summer 2011.

After initiating the expert proceeding in New Zealand, Ten Cate filed suit against TigerTurf in the Western District of Texas in December 2011 for breach of the warranties in the acquisition agreement. Two weeks later, the TigerTurf Group countered with its own suit in the New Zealand High Court (the "New Zealand case"). The New Zealand case centers upon Tiger Turf's claim that Ten Cate breached the acquisition agreement by failing to pay the full price for the last parcel of stock. Ten Cate attempted to stay the New Zealand case, but the New Zealand High Court denied the request. Ten Cate concedes that it could bring its Texas claims as counterclaims in the New Zealand case.

In addition to filing the New Zealand case, the TigerTurf Group also moved to dismiss the Texas proceedings for lack of personal jurisdiction. Ten Cate responded by moving for jurisdictional discovery as to the TigerTurf Group's contacts with Texas, which the district court granted. After jurisdictional discovery concluded in September 2012, Ten Cate filed an additional motion to dismiss on the basis of forum non conveniens.

---

[1]"EBITDA" stands for earnings before interest, taxes, depreciation, and amortization, and is one way of attempting to measure a company's cash flow. Ten Cate's EBITDA claim alleges that TigerTurf provided interim, provisional EBITDA estimates to Ten Cate that overstated TigerTurf's ultimate EBITDA by NZD$3.95 million.

No. 13-50106

Rather than resolving the personal jurisdiction dispute, the magistrate judge recommended than the Texas case be dismissed on forum non conveniens grounds. The magistrate judge found, and Ten Cate did not dispute, that New Zealand was an adequate and available alternative forum. The court then evaluated the private and public interest factors, and found that they warranted dismissal of the case to New Zealand.

Ten Cate filed an objection to the magistrate judge's report and recommendation.  The district court overruled Ten Cate's objections, adopted the magistrate judge's report and recommendation, and entered final judgment.  Ten Cate then appealed to this court.

**STANDARD OF REVIEW**

"The *forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).  In reviewing the district court's decision, we seek to ensure that the district court asked the proper questions to determine whether a dismissal is warranted, and arrived at reasonable answers to those questions. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir. 2000).  Our duty is not to perform a de novo analysis and determine whether we would arrive at the exact same determination as the district court.  *Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374, 1379 (5th Cir. 1988).  "[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257.

4

No. 13-50106

## DISCUSSION

A district court's authority to dismiss a case on the basis of forum non conveniens "derives from the court's inherent power, under Article III of the Constitution, to control the administration of the litigation before it and to prevent its process from becoming an instrument of abuse, injustice, or oppression." *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 828 (5th Cir. 1993). Convenience for the litigants and the public at large "is the cornerstone" of the forum non conveniens inquiry. *Great Prize, S.A. v. Mariner Shipping Party, Ltd.*, 967 F.2d 157, 160 (5th Cir. 1992).

To obtain a dismissal on the basis of forum non conveniens, "a party must demonstrate (1) the existence of an available and adequate alternative forum and (2) that the balance of relevant private and public interest factors favor dismissal." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). To evaluate the private and public interest factors, courts apply the factors set out by *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947). *Gulf Oil* indicates that when evaluating the private interest factors,

> [i]mportant considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.

330 U.S. at 508. By contrast, when evaluating the public interest factors, a court should consider the

> [a]dministrative difficulties [that] follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason

5

for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the . . . law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.* at 508-509.

No particular element of the test is "of dispositive weight" when performing a forum non conveniens analysis. *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir. 1986). What matters instead is that the defendants show that, overall, the convenience of the alternative forum outweighs the appropriate deference shown to the plaintiff's choice of forum. *Id.* at 830. The defendant has "the burden of invoking the doctrine and moving to dismiss in favor of a foreign forum." *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1164 (5th Cir. 1987), *overturned on other grounds*, 490 U.S. 1032 (1989). That burden "runs to all the elements of the forum non conveniens analysis." *Id.* at 1165.

As it is uncontroverted that New Zealand is an available and adequate alternative forum, Ten Cate argues that the district court erred when evaluating (1) the private interest factors, (2) the public interest factors, and (3) the level of deference applied to Ten Cate's choice of forum.

(A)    Private Interest Factors

When evaluating forum non conveniens dismissals, courts examine the parties' ability to compel unwilling witnesses as well as the cost of attendance for willing witnesses in each forum. *Gulf Oil*, 330 U.S. at 508. While the district court did examine both factors, it did not resolve a significant dispute as to whether two key witnesses who reside in Texas would be amenable to process in New Zealand. Instead, the district court posited that both sides have willing and unwilling witnesses, more of those potential witnesses are subject

No. 13-50106

to process in New Zealand, and that the costs of having witnesses testify via video-link in New Zealand is cheaper than flying them to Texas.

The two potentially unwilling Texas witnesses discussed by the parties are former employees of Tiger Sports with potential knowledge of claims about defective turf sold by Tiger Sports. The parties agree that the Texas witnesses are key witnesses. Ten Cate asserts, with reference to evidence in the record, that these witnesses are located in Texas and are unwilling to testify, and are outside the compulsory process of New Zealand courts. The TigerTurf Group asserts that they are contractually obligated to continue to cooperate with Tiger Sports after the end of their employment, including by providing testimony. Thus, what we have here is a dispute over whether key witnesses who could be compelled in the plaintiff's chosen forum are available in the alternative forum, where the plaintiff has made a credible showing that the key witnesses are unavailable in the alternative forum. On the other hand, many of the TigerTurf witnesses appear to be employees, former employees or independent contractors of TigerTurf, who may be willing witnesses. In these circumstances, the availability of the key Texas witnesses potentially has a significant impact on the balance of conveniences and the deference due to the plaintiff's choice of forum. If Ten Cate is the primary party with unwilling witnesses, and those witnesses may not be compelled to appear in New Zealand, then the unwilling witness factor and the plaintiff's choice of forum may support maintaining the case in the United States, as it is the only forum in which Ten Cate can obtain the testimony of its undisputedly key witnesses.

The district court concluded that the unwilling witnesses prong of the analysis favored New Zealand, despite this unresolved dispute regarding the availability of the Texas witnesses. Absent a proper weighing of this private interest factor, we are unable to determine if the district court's dismissal was reasonable. Accordingly, because the district court did not "resolve conflicts in

the evidence," and that evidence potentially "cuts against its conclusions, we are compelled to vacate the district court's decision dismissing the case, and remand for further proceedings." *CTF Cent. Corp. v. Inter-Cont'l Hotels Corp.*, 71 F.3d 877, at * 7 (5th Cir. 1995).

(B)     Procedure on Remand

In light of our determination that the district court improperly evaluated the private interest factors, we do not address Ten Cate's other allegations of error.  Instead, we vacate the district court's order, and remand for further proceedings consistent with this opinion so that the district court can again exercise its discretion as to whether dismissal is warranted in the first instance.  The decision regarding whether or not to take additional evidence is one that we leave to the sound discretion of the district court.  As is standard in such situations, we "intimate no view as to what ultimate decision the court should make on the forum non conveniens issue." *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1553 (5th Cir. 1991).

## CONCLUSION

We VACATE the district court's order, and REMAND for further proceedings.