United States Court of Appeals
Fifth Circuit

**F I L E D**

April 26, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
for the Fifth Circuit**

---

No. 04-21025

---

INTERNATIONAL INTERESTS, L.P.,

Plaintiff-Counter Defendant-Appellee,

VERSUS

CHARLES F. HARDY, III,

Defendant-Counter Claimant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before HIGGINBOTHAM, DeMOSS, and OWEN, Circuit Judges.

DeMOSS, Circuit Judge:

This is a diversity case in which Plaintiff-Appellee International Interests, L.P. ("Int'l Interests"), a Texas limited partnership, brought a deficiency action against Defendant-Appellant Charles F. Hardy, III ("Hardy"), an Oklahoma citizen, in federal district court to recover from Hardy the deficiency owing on a note Hardy guaranteed. Hardy appeals the district court's holding that Ohio choice of law governs the

deficiency action.  He argues that although Ohio law applies to the guaranty agreement via an Ohio choice of law clause therein, Texas law applies to the deficiency calculation under the deed of trust that secured the underlying note and therefore he has a right to a deficiency offset under section 51.003 of the Texas Property Code that the district court erroneously refused to enforce.[1]

In order to decide the merits of Hardy's appeal, we must first decide whether the district court erred in holding that Ohio choice of law governs this deficiency action. Because this

---

[1]     Hardy argues alternatively that even if Ohio choice of law does govern the deficiency action, the district court erred in failing to apply the protections of Ohio's foreclosure law in determining whether Int'l Interests was entitled to a deficiency judgment. This argument was not before the district court at the time summary judgment was entered, and accordingly we cannot consider it. *Williams v. Plumbers & Steamfitters Local 60 Pension Plan*, 48 F.3d 923, 925 (5th Cir. 1995) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 & n.10 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992)); *see also Munoz v. Int'l Alliance of Theatrical Stage Employees & Moving Picture Mach. Operators*, 563 F.2d 205, 209 (5th Cir. 1977) ("The decision whether to grant a summary judgment is for the district court alone in our three-tiered federal court system. We are merely authorized to review the propriety of the grant on the basis of the matters of record at the time the summary judgment was entered.").
        Hardy also appeals the district court's order denying his Motion for New Trial and his Motion to Modify, Alter or Amend Judgment. However, because the district court entered its order after Hardy filed his notice of appeal and because Hardy did not subsequently amend that notice of appeal or file a new notice of appeal, he did not effectively appeal the order and we do not have jurisdiction to consider it. *Fiess v. State Farm Lloyds*, 392 F.3d 802, 806-07 (5th Cir. 2004).

issue involves unresolved questions of Texas state law that are dispositive, we respectfully certify the questions to the Supreme Court of Texas.

> CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS, PURSUANT TO ARTICLE 5, SECTION 3-C OF THE TEXAS CONSTITUTION AND RULE 58 OF THE TEXAS RULES OF APPELLATE PROCEDURE. TO THE SUPREME COURT OF TEXAS AND THE HONORABLE JUSTICES THEREOF:

## I. STYLE OF THE CASE

The style of the case in which certification is made is *International Interests, L.P. v. Hardy*, No. 04-21025, in the United States Court of Appeals for the Fifth Circuit, on appeal from the United States District Court for the Southern District of Texas. Federal jurisdiction is based on diversity of citizenship. The Fifth Circuit, on its own motion, has decided to certify these questions to the Justices of the Supreme Court of Texas.

## II. STATEMENT OF THE CASE

Hardy, a resident of Oklahoma, was a co-owner of The Concierge of Houston, Inc. ("Concierge"), a Texas corporation in the nursing home business. In late 2002, KeyBank National Association ("Keybank"), an Ohio-based national banking association, loaned Concierge $4,820,000 so that Concierge could purchase a nursing home in Houston, Texas that was in foreclosure. In exchange, Concierge executed a promissory note

3

for that amount payable to Keybank. The note was secured by a deed of trust to the property and was personally guaranteed by Hardy. We note that the promisory note, the deed of trust, and the guaranty were each executed and delivered in Houston, Texas. The note was intended to serve as temporary financing until Concierge could secure permanent financing; however, Concierge never secured permanent financing and Keybank accordingly posted the nursing home for non-judicial foreclosure sale, scheduled for July 2, 2003.

On June 30, 2003, Concierge filed for bankruptcy under Chapter 11, staying the scheduled foreclosure. Unable to collect on its debt, Keybank sold the note, along with its associated guarantees and collateral rights, to Int'l Interests, a Texas limited partnership. On July 8, 2003, Int'l Interests filed the present lawsuit against Hardy to enforce Hardy's guarantee, and on July 22, Int'l Interests moved in bankruptcy court to lift the stay of foreclosure so that it could foreclose on the facility under the deed of trust. The bankruptcy court, after affording Concierge time to try to obtain permanent financing or to secure a buyer for the property, granted Int'l Interests' motion and allowed the foreclosure to proceed. At the November 4, 2003 foreclosure sale, which was conducted in Harris County, Texas in accordance with Texas law, The Ireland Limited Family Partnership

("ILFP"), the sole bidder, purchased the nursing home for $1,000,000. After applying this amount to Concierge's debt, approximately $3,090,476 was still owed on the note.[2]

Int'l Interests brought this lawsuit in the court below to recover the deficiency from Hardy pursuant to the guaranty agreement.[3] Hardy filed a counterclaim, alleging that the facility was sold at foreclosure for less than fair market value and seeking, under section 51.003 of the Texas Property Code, a determination of the facility's fair market value and an offset in that amount from any deficiency judgment.[4] Int'l Interests

---

[2] This approximation does not include interest in the amount of $90,561 that accrued on the note after the foreclosure, which is reflected in the total judgment of $3,181,037 entered by the district court in Int'l Interests' favor.

[3] For simplicity's sake, the facts that follow summarize the district court proceedings, omitting reference to the various amendments the parties made to their submissions.

[4] Section 51.003 states,
(b) Any person against whom [a deficiency] is sought by motion may request that the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale. . . .
(c) If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any claim, indebtedness, or obligation of any kind that is secured by a lien or encumbrance on the real property that was not extinguished by the foreclosure, exceeds the sale price. If no party requests the determination of fair market value or if such a request is made and no competent

moved for summary judgment, asserting that (1) a choice-of-law provision in the guaranty agreement[5] required that Ohio law — which does not provide a deficiency offset — govern the deficiency action, preventing application of section 51.003 of the Texas Property Code, and (2) even if Texas law governed the deficiency action, Hardy in the guaranty waived any right to challenge Int'l Interests' actions taken to enforce the guaranty. Hardy responded that (1) because the foreclosure was governed by Texas law under the deed of trust, Texas law also governed the resulting deficiency action; (2) he did not waive his right to challenge the actions taken by Int'l Interests to enforce the guaranty; (3) even if Ohio law governed the deficiency action, Int'l Interests was judicially or equitably estopped from pursuing a deficiency under Ohio law because it was seeking attorney's fees under Texas law; and (4) if the court found that Ohio law governed the deficiency action, it should grant him a continuance to permit him to raise defenses and counterclaims

---

evidence of fair market value is introduced, the sale price at the foreclosure sale shall be used to compute the deficiency.

TEX. PROP. CODE ANN. § 51.003.

[5] The guaranty signed by Hardy contains the following clause: "This Guaranty shall be construed in accordance with the laws of the State of Ohio and shall inure to the benefit of [Keybank], its successors and assigns, and to any holder who derives title to or an interest in this Guaranty or the Liabilities."

available under Ohio law.

The district court granted Int'l Interests' motion for summary judgment and dismissed Hardy's counterclaim, concluding that Ohio law governed the deficiency action, that Hardy had no estoppel defense, and that Hardy was not entitled to a continuance. Specifically, with respect to the choice of law issue, the district court made several determinations. First, the district court determined that the law of the guaranty, not the law of the deed of trust, governed the action because "[u]nder Texas law . . . '[a]n action against guarantors of a note for a deficiency following foreclosure on real property is an action involving *enforcement of the underlying debt*.' Thus, even if Hardy is correct that Texas law governs the deed of trust, it is the Hardy Guaranty, not the deed of trust that creates [Int'l Interests'] right to a deficiency judgment in this case [and accordingly] the law applicable to the Hardy Guaranty that governs [the] deficiency action." *Int'l Interests, L.P. v. Hardy*, No. H-03-2418, slip op. at 8 (S.D. Tex. Nov. 17, 2004) (order granting summary judgment) (second alteration in original) (quoting *Resolution Trust Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992) (quoting *Res. Sav. Ass'n v. Neary*, 782 S.W.2d 897, 902 (Tex. App.--Dallas 1989, writ denied)) and citing *First Commerce Realty Investors v. K-F Land Co.*, 617

7

S.W.2d 806, 809 (Tex. Civ. App.--Houston [14th Dist.] 1981, writ ref'd n.r.e.)). The district court then conducted a choice of law analysis under Texas law and determined that because the parties could have explicitly "agreed, without violating Ohio law, that Hardy would be liable for the full amount of any deficiency judgment with no right of offset," *id.* at 8-9 (citing *Chase Manhattan Bank, N.A. v. Greenbriar N. Section II*, 835 S.W.2d 720 (Tex. App.--Houston [1st Dist.] 1992, no writ.)), and because "under Texas law, Hardy could have contractually waived the right of offset provided by section 51.003 of the Texas Property Code," *id.* at 9 (citing *LaSalle Bank Nat'l Ass'n v. Sleutel*, 289 F.3d 837 (5th Cir. 2002)), the Ohio choice of law provision in the guaranty agreement between the parties was enforceable. Hardy appealed.

## III. LEGAL ISSUES

In diversity cases, a federal court must follow the choice of law rules of the forum state, here Texas. *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004). The Supreme Court of Texas has recognized that contractual choice of law provisions should generally be enforced, but has also stated that "the parties' freedom to choose what jurisdiction's law will apply . . . [is not] unlimited. They cannot require that their contract be governed by the law of a jurisdiction which has no

8

relation whatever to them or their agreement. And they cannot by agreement thwart or offend the public policy of the state the law of which ought otherwise to apply." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990). In order to effect this policy, the court adopted section 187 of the *Restatement (Second) of Conflict of Laws*,[6] which defines in conflicts cases when the law of the state chosen by the parties to a contract will be applied. *Id.*

The first problem in this case is that the parties arguably agreed that the law of one state, Texas, would apply to the deed

---

[6]    Section 187 states,
(1)  The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
(2)  The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
        (a)  the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
        (b)  application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
(3)  In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.
RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971).

of trust and that the law of another state, Ohio, would apply to the guaranty agreement.[7] The Fifth Circuit has held, interpreting Texas law, that because a deficiency action "is an action involving enforcement of the underlying debt," the law of the guaranty applies in an action to recover that debt to the exclusion of the law of the deed of trust. *Resolution Trust Corp.*, 958 F.2d at 1318 (citing *Res. Sav. Ass'n*, 782 S.W.2d at 902). However, this Fifth Circuit case and the Texas court of appeals case it was interpreting involved foreclosures that occurred prior to the date of enactment of section 51.003 of the Texas Property Code; accordingly, neither court considered that provision when deciding which law to apply. Moreover, the Supreme Court of Texas has never spoken on whether the law of the guaranty governs in a Texas deficiency action to the exclusion of the law of the deed of trust. Accordingly, we respectfully request that the Supreme Court of Texas address this issue via a reply to our certified questions.

The second problem in this case is the application of *Restatement (Second) of Conflict of Laws* section 187 and the principles underlying it. Texas applies section 187 to determine

_____

[7] We do not make any statement here about whether the parties agreed that the deed of trust, which incorporates Texas foreclosure procedures and repeatedly refers to the Texas Property Code, would be governed by Texas law. We assume, for argument's sake, that they did.

in a conflicts case whether a choice of law clause is enforceable. *DeSantis*, 793 S.W.2d at 677-78. The first step is to determine whether under section 187(1) of the *Restatement* the specific issue was "one which the parties could have resolved by an explicit provision in their agreement." *Id.* at 678 (internal quotation marks omitted). Although we do not disagree with the district court that Texas's right of offset is waivable,[8] an issue the Supreme Court of Texas has never addressed, we are not convinced that under Texas law a party can waive that right via a general choice of law provision. A waiver must generally be knowing and intelligent to be enforceable, *see, e.g.*, *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 844 (Tex. 2000), and it must be stated in clear and unambiguous language, *see, e.g.*, *Purnell v. Follett*, 555 S.W.2d 761, 766 (Tex. Civ. App.--Houston [14th Dist.] 1977, no writ). Considering these principles, we are not sure how the Supreme Court of Texas would analyze section 187(1) of the Restatement in this case.

Furthermore, we are not clear how the Supreme Court of Texas would analyze section 187(2). Section 187(2) states that the law of the state chosen by the parties to govern will be applied

---

[8] *Int'l Interests*, No. H-03-2418, at 9 (citing *LaSalle Bank Nat'l Ass'n*, 289 F.3d at 840-42); *see also Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 278-81 (Tex. App.--Houston [1st Dist.] 2004, pet. dism'd) (agreeing with *LaSalle* that the right of offset can be contractually waived).

11

unless either

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*DeSantis*, 793 S.W.2d at 678. Under subsection (a), the chosen state in this case, Ohio, no longer has a substantial relationship to the parties and there is no longer a reasonable basis for applying Ohio law (other than giving effect to the choice of law provision). Granted, Keybank National Association, the original lender and guarantee, is an Ohio-based national banking association, but Keybank sold its interest in the note and the guaranty to International Interests, L.P., a Texas limited partnership, before this suit commenced. And Mr. Hardy is an Oklahoma resident. Moreover, the property that secured the note is in Texas, the note, deed of trust, and guaranty were all signed in Texas, and Texas's foreclosure law, not Ohio's, was used to foreclose the underlying property. These facts might push a Texas court analyzing section 187(2) to apply Texas law, especially considering the statement in *DeSantis* that the parties to a contract "cannot require that their contract be governed by

12

the law of a jurisdiction which has no relation whatever to them or their agreement," *id*. at 677, but we have no guidance from the Supreme Court of Texas on this issue.[9]

Moreover, under subsection (b), absent an effective choice of law, Texas's law would most likely apply in this case and Texas arguably has a materially greater interest than Ohio in deciding the deficiency offset issue (Ohio really has no interest now that Keybank is not involved). Thus, the enforceability of the Ohio choice of law provision would come down to a fundamental policy inquiry under section 187(2)(b). Texas law does not define whether the right of offset is fundamental, at least not in the choice of laws context.[10] There are some Texas cases indicating that the right of offset is not fundamental, *see supra* note 10, but the Texas Supreme Court has not spoken on the issue and there

---

[9] Section 187(2)(a) is particularly problematic considering comment d to section 187, which states that subsection (2) "applies only when two or more states have an interest in the determination of the particular issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187, cmt. d. As stated above, Ohio no longer has any interest in the determination of the deficiency offset issue, as no party is from Ohio, the property in question is in Texas, the note, deed of trust, and guaranty were all signed in Texas, and Texas's foreclosure law, not Ohio's, was used to foreclose the property.

[10] The cases stating that the right of offset can be waived give as one reason that the right of offset is not fundamental. *See Segal*, 155 S.W.3d at 278; *see also LaSalle*, 289 F.3d at 840 & n.2. But the importance of the right of offset in the waiver context is not necessarily the same as in the choice of laws context, where application of foreign law may abrogate the right of offset without the guarantor's knowledge.

are some intricacies here that make this issue particularly problematic, namely, Texas may have a fundamental policy interest in having its entire foreclosure scheme applied, not just parts of it, when enforcing a foreign choice of law provision would destroy some of the protections Texas foreclosure law provides. Accordingly, we respectfully request that the Supreme Court of Texas address the application of section 187 of the *Restatement* via a reply to our certified questions.

IV. QUESTIONS CERTIFIED

We certify the following two determinative questions of law to the Supreme Court of Texas:

1. In an action to recover the deficiency owing on a note guaranteed by the defendant where the guaranty agreement between the original parties is governed by Ohio law and the deed of trust to the property that secured the note is governed by Texas law and the property itself is in Texas, does the law of the guaranty or the law of the deed of trust govern the calculation of any deficiency?

2. If the law of the guaranty governs the calculation of the deficiency, should an Ohio choice of law clause in that guaranty be given effect under section 187 of the *Restatement (Second) of Conflict of Laws* where (1) no party is from Ohio, the property that secured the note is in Texas, the note, deed of trust, and

14

guaranty were all executed and delivered in Texas, and Texas's foreclosure law, not Ohio's, was used to foreclose the underlying property and (2) applying Ohio law would prevent application of section 51.003 of the Texas Property Code, which provides for a deficiency offset?

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified. The answers provided by the Supreme Court of Texas will determine the issue on appeal in this case. The record and copies of the parties' briefs are transmitted herewith. QUESTIONS CERTIFIED.