**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

—————

No. 15-10757

—————

JONATHAN BARNETT,

Plaintiff - Appellant

v.

DYNCORP INTERNATIONAL, L.L.C.,

Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**
July 26, 2016

Lyle W. Cayce
Clerk

—————

Appeal from the United States District Court
for the Northern District of Texas

—————

Before JONES, WIENER, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Plaintiff Jonathan Barnett alleges that his former employer, DynCorp International LLC, failed to give him all of the pay and benefits he was owed for work he did in Kuwait. To resolve this appeal, we must decide whether the district court properly dismissed Barnett's putative class action complaint on the basis of a forum-selection clause in his employment contract. That decision presents a series of choice-of-law issues. Ultimately, we affirm.

I.

DynCorp, a private contractor that provides logistics support services to the U.S. Army, is an American company with its principal place of business in Texas. Barnett is a resident of the state of Georgia. In February 2011,

No. 15-10757

DynCorp extended Barnett an offer to work for DynCorp in Kuwait. Barnett traveled to Texas and signed a one-year "Foreign Service Employment Agreement" drafted by DynCorp in Texas. He signed a similar one-year contract in February 2012 and extensions of the second contract in March 2013. We refer collectively to these contracts, which are essentially identical for our purposes, as the "Agreement."

The Agreement designated Barnett's "geographical location of employment" as Kuwait. Barnett's base wages were set in American dollars, but his overtime and working holiday compensation were to "be paid at premium rates in accordance with Kuwait Labour Law, No. 6 of 2010." The Agreement also incorporated the Kuwait Labour Law to determine Barnett's work schedule, holidays, medical leave benefits, circumstances under which he could be terminated, and compensation due upon termination. Other benefits such as paid leave were set with reference to U.S. Army contracting policies. Importantly, the Agreement stated: "This Contract shall be governed by and interpreted exclusively under the laws of Kuwait and all disputes between the Parties shall be resolved exclusively in Kuwait."

Barnett completed a paid one-week training program in Texas, then flew to Kuwait in early March 2011. In his two-plus years working in Kuwait, Barnett alleges, he worked seventy-two hours per week, and worked on at least some "off days" and public holidays. He was paid in U.S. dollars, and only U.S. taxes were withheld from his wages.

In a March 2013 letter, DynCorp informed Barnett that his employment would soon be terminated because DynCorp would no longer be providing services at Barnett's location. That letter promised that Barnett would receive an end-of-service indemnity, accrued and unused leave credit, and other benefits. And it stated that "[a]ny balance of wages due [would] be distributed

2

No. 15-10757

on the next scheduled pay date after [Barnett's] departure" from Kuwait. Barnett left Kuwait, concluding his work for DynCorp, on June 10, 2013.

Barnett filed this action on March 27, 2015, in a federal court in Texas. He alleges that he never received all of the wages and benefits DynCorp owes him, and that DynCorp breached the Agreement by failing to provide him—"in accordance with the [Kuwait] Labour Law"—overtime pay, paid leave, end-of-service payment, and premature contract termination damages.  He also contends that DynCorp failed to pay him hardship compensation and meal per diems, and did not provide all of the free housing and transportation required by the Agreement.

DynCorp moved to dismiss on the basis of *forum non conveniens*, arguing that the Agreement's forum-selection clause mandates that the action be litigated in Kuwait.  Barnett opposed the motion, responding that the forum-selection clause is void under Texas law and unenforceable under federal law. Specifically, Barnett argued that under Texas Civil Practice & Remedies Code section 16.070,[1] the forum-selection clause is void because it directs litigation to a forum in which the limitations period for breach of an employment contract is less than two years.  The district court granted the motion, concluding that the forum-selection clause is valid, enforceable, and requires dismissal under *Atlantic Marine Construction Co. v. United States District Court*, 134 S. Ct. 568 (2013).  Barnett timely appealed.

## II.

The Supreme Court recently clarified that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through

---

[1] *See* Tex. Civil Practice & Rem. Code § 16.070(a) ("Except as provided by Subsection (b), a person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years.  A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state.").

No. 15-10757

the doctrine of *forum non conveniens*." *Atl. Marine*, 134 S. Ct. at 580. Usually, a court applying that doctrine must determine whether there is an adequate alternative forum and, if so, decide which forum is best-suited to the litigation by considering a variety of private- and public-interest factors and giving deference to the plaintiff's choice of forum. *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794–95 (5th Cir. 2007). The presence of a valid forum-selection clause simplifies this analysis in two ways. "First, the plaintiff's choice of forum merits no weight" because, by contracting for a specific forum, "the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Atl. Marine*, 134 S. Ct. at 581–82. Second, the private-interest factors "weigh entirely in favor of the preselected forum," so that the "district court may consider arguments about public-interest factors only." *Id.* at 582. Hence, a valid forum-selection clause controls the *forum non conveniens* inquiry "[i]n all but the most unusual cases." *Id.* at 583. This harmonizes with the Court's guidance that contractually selected forums often "figure[] centrally in the parties' negotiations" and become part of those parties' "settled expectations"— so if a plaintiff disregards such a contractual commitment, "dismissal . . . work[s] no injustice." *Id.* at 583 & n.8.

When a district court decides a *forum non conveniens* motion based on a forum-selection clause, we review de novo the "interpretation" and "assessment of that clause's enforceability," then "review for abuse of discretion the court's balancing of the private- and public-interest factors." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016).

## III.

Article 144 of the Kuwait Labour Law provides a one-year statute of repose, running from the termination of the relevant employment relationship, which the parties agree would apply if Barnett were to bring suit in Kuwait. *See Lee v. ITT Corp.*, 534 F. App'x 626, 626 (9th Cir. 2013) (unpublished)

No. 15-10757

(referencing the statute of repose).  Barnett contends that as a result, the Agreement's Kuwaiti choice-of-law and forum-selection clauses effectively create a limitations period of less than two years.  Those clauses, he submits, are therefore nullities because Texas Civil Practice & Remedies Code section 16.070 makes "void in [Texas]" any "stipulation, contract, or agreement that establishes a limitations period that is shorter than two years."  DynCorp disagrees, arguing that section 16.070 is irrelevant to this case.  We must decide which jurisdiction's law governs, and to what effect.

## A.

*Atlantic Marine* tells us that a "valid" forum-selection clause pointing to a foreign tribunal requires *forum non conveniens* dismissal absent unusual circumstances.  134 S. Ct. at 581–83 & n.8.  But in *Atlantic Marine*, "there was no dispute that the forum-selection clause was valid."  *Id.* at 576.  And the Court noted, without elaboration, that its analysis "presuppose[d] a contractually valid forum-selection clause."  *Id.* at 581 n.5.  *Atlantic Marine* thus did not answer under what law forum-selection clauses should be deemed invalid, *see In re Union Elec. Co.*, 787 F.3d 903, 906–07 (8th Cir. 2015)—an issue that has long divided courts, *see, e.g.*, *Lambert v. Kysar*, 983 F.2d 1110, 1116 & n.10 (1st Cir. 1993) (noting a circuit split over whether to apply federal or state law).  Consequently, courts and commentators have continued to express uncertainty about "whether a federal court in a diversity case should look to federal law, state law or both when deciding whether a forum selection clause is valid."  *Rolfe v. Network Funding LP*, No. 14-CV-9-BBC, 2014 WL 2006756, at \*1 (W.D. Wis. May 16, 2014); *see* Linda S. Mullenix, *Gaming the System: Protecting Consumers from Unconscionable Contractual Forum-Selection and Arbitration Clauses*, 66 HASTINGS L.J. 719, 731 (2015) (noting that *Atlantic Marine* left open the question of "[w]hat body of law applies to

evaluate the validity and enforceability of a forum-selection clause," which is "further complicated if the contract also contains a choice-of-law provision").

Neither the Supreme Court nor this court has said what source of law governs the "validity" of a forum-selection clause. But even in diversity cases, federal law governs the "enforceability" of forum-selection clauses in this circuit. *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997); *see Weber*, 811 F.3d at 770. This federal law, derived from a pair of seminal admiralty cases, requires a party attacking a forum-selection clause to overcome a presumption of enforceability by showing that the clause is "'unreasonable' under the circumstances" because

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth*, 121 F.3d at 963 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991), and *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13 (1972)). When the "interpretation" of a forum-selection clause is at issue in a diversity case, however, we apply the forum state's choice-of-law rules to determine what substantive law governs. *Weber*, 811 F.3d at 770–71.

Barnett argues that the "validity" of a forum-selection clause is a matter of substantive contract law that is separate from and must precede any federal-law analysis of "enforceability" or application of *Atlantic Marine*. DynCorp seems to counter that "validity" in this context is just part of the federal law of enforceability, which heavily favors forum-selection clauses. This dispute potentially matters because, in Barnett's view, applicable state law voids the forum-selection clause.

No. 15-10757

Support can be marshalled for each choice-of-law position. Barnett's comports with the general principle that outside narrow areas of federal interest, "[t]here is no federal common law of contracts." *Ford v. Hamilton Invs., Inc.*, 29 F.3d 255, 258 (6th Cir. 1994). It also mirrors our approach to arbitration clauses—which are, "in effect, a specialized kind of forum-selection clause." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). Despite the strong federal policy in favor of arbitration, "[g]iven the 'fundamental principle that arbitration is a matter of contract,' to determine whether an agreement to arbitrate is valid, courts apply 'ordinary state-law principles that govern the formation of contracts.'" *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012) (citation omitted); *see also Brown v. Fed. Capital Corp.*, 991 F. Supp. 2d 857, 860–62 (S.D. Tex. 2014) (citing an arbitration case for the proposition that courts should apply state-law contract formation principles to determine whether a "contractually valid forum-selection clause" exists).

There are problems with Barnett's position, though. First, we do not appear to have drawn his distinction between validity and enforceability, instead seeming to treat those words as synonyms in the forum-selection clause context. Even in diversity cases, we have often framed our analysis of such clauses by quoting *Bremen*'s instruction that forum-selection clauses "are prima facie *valid* and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (5th Cir. 1996) (emphasis added).[2]

---

[2] *See also Weber*, 811 F.3d at 773–74 (stating that forum-selection clauses are to be treated as "presumptively valid"); *Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 301 (5th Cir. 1998) (referencing a "presumption of [a] forum-selection clause's validity"). In fact, a law review note that argues for precisely Barnett's distinction between validity and enforceability criticizes our court for "uncritically assum[ing] that since the enforcement of forum-selection clauses is sometimes governed by federal law, the[ir] validity must also be a question of federal law." Matthew J. Sorensen, Note, *Enforcement of Forum-Selection Clauses in Federal Court After* Atlantic Marine, 82 FORDHAM L. REV. 2521, 2546 (2014) (footnote omitted). We

Too, while presupposing a "valid" forum-selection clause, the Court in *Atlantic Marine* did not mention the word "enforceability."

Barnett's position is also in tension with *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988). There, the defendant moved to transfer or dismiss a contract dispute on the basis of a forum-selection clause. The federal district court denied that motion, reasoning that Alabama law controlled and disfavored forum-selection clauses. *Id.* at 24. Indeed, the Alabama Supreme Court at that time held that "contractual agreements by which it is sought to limit particular causes of action which may arise in the future to a specified place[] are . . . invalid." *Redwing Carriers, Inc. v. Foster*, 382 So. 2d 554, 556 (Ala. 1980), *overruled by Prof'l Ins. Corp. v. Sutherland*, 700 So. 2d 347 (Ala. 1997). Yet the U.S. Supreme Court reversed, holding that, if the forum state's law rejects forum-selection clauses, a district court should consider that in its 28 U.S.C. § 1404(a) balancing of factors for and against transfer, rather than afford the forum-selection clause "no consideration (as [state] law might have it)." *Stewart*, 487 U.S. at 30–31.

*Stewart* arguably could be distinguished because it relied on Congress's enactment of § 1404(a), which governs transfer among federal district courts—whereas here, DynCorp is attempting to enforce a forum-selection clause pointing to a different country through *forum non conveniens*. But one sister circuit, recognizing that distinction, still opined in dicta that *Stewart* "supported" the "[p]robably . . . correct" position that federal law governs the "validity" of a forum-selection clause outside the transfer context. *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 374 (7th Cir. 1990). And *Atlantic Marine*

---

also note that the Supreme Court of Texas has referred to *Bremen* and its progeny as addressing "the validity of a forum-selection clause," *In re AIU Ins. Co.*, 148 S.W.3d 109, 111 (Tex. 2004), and that post-*Atlantic Marine*, one sister circuit has described *Bremen* as giving the test for "whether a forum selection clause is invalid," *Martinez v. Bloomberg LP*, 740 F.3d 211, 229 (2d Cir. 2014) (federal question case).

further tied § 1404(a) to *forum non conveniens*, reasoning that the former is "merely a codification of" the latter "for the subset of cases in which a transferee forum is within the federal court system." 134 S. Ct. at 580.[3] If *Stewart* does control—and, thus, even state law squarely holding forum-selection clauses "invalid" does not suffice to defeat such clauses in the *forum non conveniens* context—Barnett's more indirect reliance on Texas's prohibition of short contractual limitations periods seems doubly misplaced.

On the other hand, though many courts have done so,[4] treating federal law as governing the validity of forum-selection clauses in diversity cases is not unproblematic either. *Bremen* and *Carnival Cruise Lines* were admiralty cases, and federal common law developed in that context is "not freely transferable" to diversity cases. *Stewart*, 487 U.S. at 28 (citing *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641–42 (1981)). Further, DynCorp provides no satisfying theoretical explanation for excepting forum-selection clauses from the general rule that state law governs contractual "validity," *e.g. Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987) (per curiam), or distinguishing them from arbitration clauses, whose validity is determined by state law, *Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 914 (5th Cir. 2014).

We need not—and therefore do not—resolve this issue today. As explained below, under either federal law or Texas's choice-of-law rules, Barnett can prevail only if enforcing the parties' choice of Kuwaiti law and a

---

[3] *See also* Robin Effron, Atlantic Marine *and the Future of Forum Non Conveniens*, 66 HASTINGS L.J. 693, 702, 713–15 (2015) (arguing that *Atlantic Marine* "collapsed the distinction between" the two analyses, at least in cases involving forum-selection clauses).

[4] *See Black Hills Truck & Trailer, Inc. v. MAC Trailer Mfg., Inc.*, No. CIV. 13-4113-KES, 2014 WL 5782452, at *4 & n.3 (D.S.D. Nov. 6, 2014) ("Following *Atlantic Marine* . . . . [t]he majority of courts have applied *Bremen* and its progeny to determine whether to give controlling weight to a forum-selection clause and they have not distinguished between validity and enforceability of the clause.") (collecting cases).

No. 15-10757

Kuwaiti forum would contravene a "strong" or "fundamental" public policy of Texas. We conclude that it would not.

## B.

If federal law alone controls the validity and enforceability of this forum-selection clause, Barnett must show that the clause is unreasonable because (1) the clause was incorporated into the Agreement by fraud or overreaching, (2) the selected forum is gravely unfair or inconvenient, (3) the chosen law is so fundamentally unfair as to deprive him of a remedy, or (4) enforcement of the forum-selection clause would contravene a strong public policy of the forum state. *Haynsworth*, 121 F.3d at 963. Barnett does not argue any of the first three prongs. That leaves the question whether the clause's enforcement would contravene a strong public policy of Texas.

If, instead, the issue of a forum-selection clause's "validity" is separate from its "enforceability" and not determined by federal law in diversity cases, it seems that the law applicable to that determination would be the same law applicable to forum-selection clause interpretation—that is, the law selected by the forum state's choice-of-law rules. *See Weber*, 811 F.3d at 770–71 (stressing "the core obligation of a federal court, sitting in diversity, to ascertain which body of substantive law to apply by implementing the choice-of-law rules of its home jurisdiction"). "Simplicity argues for determining the validity and meaning of a forum selection clause," at least when "interests other than those of the parties will not be significantly affected by the choice of which law is to control, by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears." *Abbot Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007). And the Restatement (Second) of Conflict of Laws, which Texas courts generally look to "[i]n deciding which state's law should govern the construction of contractual rights," *Maxus Expl. Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991), provides that

10

No. 15-10757

"[t]he validity of a contract, in respects other than capacity and formalities, is determined by the law selected by" the Restatement's general choice-of-law principles, RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 200 (1971).  Thus, if we were to look to nonfederal law to determine the validity of this forum-selection clause, we would not automatically apply Texas's substantive law; rather, we would apply the state's choice-of-law rules.  *See Weber*, 811 F.3d at 770.  Under those rules, Texas law would control only if the Agreement's choice-of-law clause—which "exclusively" selects Kuwaiti law to govern the Agreement and disputes between the parties—is itself unenforceable.  *Cf. Nexen Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 417 (Tex. App. 2006) ("[I]f the choice-of-law provision is enforceable, it requires the application of Alberta's statute of repose.").

"The Supreme Court of Texas has recognized that contractual choice of law provisions should generally be enforced, but has also stated that 'the parties' freedom to choose what jurisdiction's law will apply . . . [is not] unlimited.'" *Int'l Interests, L.P. v. Hardy*, 448 F.3d 303, 306–07 (5th Cir. 2006) (alteration in original) (quoting *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990)).  That freedom is limited by Texas's adoption of section 187 of the Restatement, which provides:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

11

No. 15-10757

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT § 187;[5] *see DeSantis*, 793 S.W.2d at 677–78.

We may assume, in Barnett's favor, that we are dealing with an issue the parties "could [not] have resolved by an explicit provision in their agreement directed to that issue."[6] Thus, as in a recent case in which we applied Texas's choice-of-law rules, to render the Agreement's choice-of-law provision unenforceable, Barnett must satisfy Section 187(2) of the Restatement. *See Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015). As in that case, Section 187(2)(a) does not help Barnett because Kuwait clearly has a "substantial relationship" to this contract for services to be performed there. *See id.* at 581–82; *see also Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 325 (Tex. 2014). Hence, the parties' choice of Kuwaiti law would control unless its application "would be [1] contrary to a fundamental policy of a state [2] which has a materially greater interest than the chosen state in the determination of the particular issue and [3] which, under the rule of § 188,

---

[5] Section 188 of the Restatement directs how to determine the governing law in the absence of an effective choice of law by the parties. By cross-reference, it directs courts to consider factors including (1) "the needs of the interstate and international systems," (2) "the relevant policies of the forum," (3) the relevant policies and interests of other interested states, (4) "the protection of justified expectations, (5) "the basic policies underlying the particular field of law," (6) "certainty, predictability, and uniformity of result," and (7) "ease in determination and application of the law to be applied." RESTATEMENT §§ 188, 6(2). In weighing these factors, courts are to consider "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id.* § 188(2).

[6] Otherwise, we would simply apply Kuwaiti law per the parties' contractual choice. *See* RESTATEMENT § 187(1).

would be the state of the applicable law in the absence of an effective choice of law by the parties." RESTATEMENT § 187(2); *Drennen*, 452 S.W.3d at 325–27.

Taking the last of these requirements first, it is not clear that Texas law would apply in the absence of an effective choice of law provision because, in a contract for the performance of services, the main place of performance is "[as] a rule . . . conclusive in determining what state's law is to apply." *DeSantis*, 793 S.W.2d at 679; *see also* RESTATEMENT § 196 (explaining that the "validity of a contract for the rendition of services" is usually determined "by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered"); c*f. Castilleja v. Camero*, 414 S.W.2d 424, 426 (Tex. 1967) (holding, before Texas's adoption of the Restatement, that "[a] contract which is made in one jurisdiction but which relates to and is to be performed in another jurisdiction is governed by the law of the place of performance"). Although Barnett trained for a week in Texas, the Agreement covered more than two years of services rendered in Kuwait. Thus, there is a strong argument that Section 187(2)(b) is not satisfied because Texas law would not apply in the absence of a choice-of-law provision—and that the Kuwaiti choice-of-law clause should therefore be given effect, making irrelevant section 16.070's prohibition on short contractual limitations periods. Indeed, the Ninth Circuit concluded in a similar case that, even though "[t]he relevant employment contract contain[ed] no choice of law provision,"[7] a district court applying the Restatement correctly determined that Kuwait's substantive law governed, and should have applied that country's one-year statute of repose as well. *Lee*, 534 F. App'x at 626–27.

But even if we assumed that Texas law would apply absent a choice-of-law provision, *and* further assumed that Texas has a materially greater

---

[7] *Lee v. ITT Corp.*, No. C10-0618-JCC, 2012 WL 8751733 (W.D. Wash. Feb. 10, 2012).

interest in the time for suing under the Agreement,[8] we would still need to ask a very similar question as we would if we looked only to *Bremen* and its progeny: would application of Kuwaiti law contravene a fundamental policy of the state of Texas, as expressed in section 16.070?

## C.

The Restatement does not give "a general definition of 'fundamental policy,'" and the Texas Supreme Court has been reluctant to provide one itself. *Drennen*, 452 S.W.3d at 327.  That high court has, however, made clear that application of foreign law "is not contrary to the fundamental policy of the forum merely because it leads to a different result," or "is materially different." *DeSantis*, 793 S.W.2d at 680.  "[T]he focus," rather, "is on whether the law in question is a part of state policy so fundamental that the courts of the state will refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction." *Id.*

We conclude that enforcing the Kuwaiti choice-of-law clause, even given the statute of repose, would not contravene a fundamental policy of the state of Texas.  This court has affirmed a refusal to apply section 16.070's substantially similar predecessor to an agreement not shown to be "a Texas contract." *Watson v. R.I. Ins. Co.*, 196 F.2d 254, 254–56 (5th Cir. 1952).  That suggests that section 16.070 limits parties' freedom to contractually shorten limitation periods only in contracts otherwise governed by Texas law, and that

---

[8] The latter assumption is also debatable because, as discussed below, Article 144's statute of repose is a substantive part of Kuwait's labor law.  Because we assume these points in Barnett's favor, we need not discuss the Texas courts' interpretation of the Restatement's guidance that the contacts relevant to Section 188 "are to be evaluated according to their relative importance with respect to the particular issue" being evaluated.  *Compare Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 171–73 (Tex. App. 2002) (en banc), *with id.* at 182–84 (Wittig, J., dissenting).  Nor do we opine on application of the Restatement outside of the context of Texas law.

its underlying policy has similarly limited reach. Consonant with that interpretation (and when, as here, the party arguing for Texas law failed to meaningfully brief Texas's choice-of-law rules), one federal court sitting in Texas rejected an argument that section 16.070 voided a one-year limitations period in a contract with a Virginia choice-of-law clause. *Bakhico Co. v. Shasta Beverages, Inc.*, No. Civ.A.3:94-CV-1780-H, 1998 WL 25572, at *11 (N.D. Tex. Jan. 15, 1998).

More fundamentally, we are dealing not with a contractual limitations period, but with a contractual choice of foreign law that includes a one-year statute of repose for certain claims. "Unlike a statute of limitations, 'a statute of repose creates a substantive right to be free from liability after a legislatively determined period.'" *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 363 (5th Cir. 2005) (quoting *Cadle Co. v. Wilson*, 136 S.W.3d 345, 350 (Tex. App. 2004)); *see also CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2182–83 (2014). A statute of repose, therefore, typically operates as "a substantive definition of, rather than a procedural limitation on, rights." *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 261 (Tex. 1994) (quoting *Lamb v. Wedgewood S. Corp.*, 302 S.E.2d 868, 872 (N.C. 1983)); *see also Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex. 2009). And here, an expert declaration that Barnett does not challenge states that Kuwait's one-year statute of repose is indeed "substantive."[9]

The statute of repose, therefore, is part of Barnett and DynCorp's choice of a body of substantive law to govern their relationship. The text of section 16.070—which proscribes provisions "that purport[] to limit the time in which

---

[9] *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."); *cf. Walls v. Gen. Motors, Inc.*, 906 F.2d 143, 146 (5th Cir. 1990) (holding that a federal court sitting in Mississippi was bound to apply an Oregon statute of repose because Oregon courts had held it to be substantive).

to bring suit" or "establish[] a limitation period that is shorter than two years"—gives no indication that it bars provisions selecting foreign law that includes, as a substantive matter, a shorter-than-two-years statute of repose. No Texas court has interpreted section 16.070 or a predecessor statute that way.[10]  And we see no other sufficiently strong indication to make an *Erie*[11] guess that the Supreme Court of Texas would do so.  *See Hux v. S. Methodist Univ.*, 819 F.3d 776, 780 (5th Cir. 2016) (describing a federal court's role in applying state law); *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1217 (5th Cir. 1985) ("[I]t is not for us to adopt innovative theories of . . . Texas law, but simply to apply that law as it currently exists.").[12]

We are particularly reluctant to adopt Barnett's novel reading of section 16.070 because it would create unpredictability for contracting parties.  As is

---

[10] Barnett relies on *Spicewood Summit Office Condominiums Ass'n v. America's First Lloyd's Insurance Co.*, 287 S.W.3d 461 (Tex. App. 2009), for the proposition that section 16.070 invalidates these clauses because they have the "practical effect" of imposing an illegal limitations period.  That case is unavailing.  There, the contract required that a lawsuit be brought "within 2 years and one day after the date on which the direct physical loss or damage occurred," but also required the insured to submit certain documents and wait for a claim acceptance or denial before suing.  *Id.* at 465–66.  Thus, it was clear from the contract that the clock would always start ticking before the insured's claim for breach of contract accrued, with "the practical effect of providing a period in which to file suit that is less than two years."  *Id.* at 466.  *Spicewood* teaches that parties may not avoid section 16.070 through cleverly drafted limitations provisions—not that section 16.070 bars parties from choosing to be governed by substantive law that includes a relatively short statute of repose.

[11] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[12] We find unpersuasive Barnett's best cited authority for applying section 16.070 to invalidate a choice-of-law clause.  In that unpublished case, a bankruptcy court denied summary judgment on which law applied where a contract provided that (1) New York law would govern and (2) no action could be brought under the contract more than one year after the claimant gained knowledge of the cause of action. *Jenkins v. Fandango, Inc. (In re Vectrix Bus. Sol.)*, No. 01-35656-SAF-11, 2004 Bankr. LEXIS 792, at *3–4, 11 (Bankr. N.D. Tex. June 2, 2004).  Though it cited Texas's choice-of-law rules in overriding these clauses based on a "fundamental policy" embodied in section 16.070, *id.* at *5–9, that court elided the requirements that to overcome the parties' choice of law, (1) Texas law would need to apply in the absence of a choice-of-law provision and (2) Texas must have a materially greater interest in the determination of the particular issue.  *See Drennen*, 452 S.W.3d at 325–27.  More importantly, *Jenkins*, like *Spicewood*, dealt with an express contractual limitations period, not application of a foreign state's substantive law that includes a statute of repose.

oft-stated in cases involving choice-of-law clauses, among the prime objectives of contract law are "protecting parties' expectations and enabling parties to predict accurately what their rights and liabilities will be." *Drennen*, 452 S.W.3d at 325.[13] And "[u]nlike traditional limitations provisions, which begin running upon accrual of a cause of action, a statute of repose runs from a specified date without regard to accrual of any cause of action." *Trinity River*, 889 S.W.2d at 261. The statute of repose in this case runs from the end of the relevant employment relationship. A claim for breach of contract in Texas, by contrast, "accrues when the contract is breached," *Cosgrove v. Cade*, 468 S.W.3d 32, 39 (Tex. 2015); that, logically, must be when section 16.070's "time to bring suit" also begins. From all that appears in the record about Article 144, it would sometimes allow more than two years after a breach to sue on a contract. It therefore seems that under Barnett's theory, whether Kuwaiti law could be chosen would depend on the temporal proximity of the breach of contract and the end of the employment relationship—something that parties cannot predict ex ante. This further weakens Barnett's position that section 16.070, or any fundamental policy behind it, stretches to bar the choice-of-law and forum-selection clauses here.

Based on these considerations, we conclude that enforcing the Kuwaiti choice-of-law provision would not contravene a fundamental Texas policy. *See Nexen*, 224 S.W.3d at 421 ("Generally speaking, application of another jurisdiction's laws is not contrary to the forum state's fundamental public policy merely because application of the other state's law leads to a different result[.]"). So even indulging every relevant assumption in Barnett's favor, we would not invalidate the choice-of-law clause, and if nonfederal contract law

---

[13] C*f. Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (unpublished) (similar point for forum-selection clauses).

No. 15-10757

controls the "validity" of the forum-selection clause, that law is Kuwait's.  For the same reasons, if federal law alone controls, Barnett has failed to show that enforcement of the forum-selection clause is unreasonable because it would contravene a strong forum-state policy.

D.

In sum, without deciding whether Barnett's validity-enforceability distinction has merit, we conclude that his relied-upon state law neither voids this forum-selection clause nor renders its enforcement unreasonable under federal law.[14]  The district court was therefore right to apply *Atlantic Marine*'s modified *forum non conveniens* framework.  As the district court recognized, Barnett's choice of forum merits no weight in this analysis, and the private-interest factors "weigh entirely in favor of the preselected forum," Kuwait.  *See Atl. Marine*, 134 S. Ct. at 582.  All that remains are the public-interest factors, which include

> administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at

---

[14] A chosen forum is not fundamentally unfair merely because its law is less generous than, or because the result might differ from that under, the forum state's law.  *See Haynsworth*, 121 F.3d at 969 ("The view that every foreign forum's remedies must duplicate those available under American law would render all forum selection clauses worthless and would severely hinder Americans' ability to participate in international commerce."); *Martinez*, 740 F.3d at 229 (foreign law was not inadequate despite its shorter limitations period and higher cost of litigation).  Consistent with this principle, the Ninth Circuit has held, in an unpublished disposition, that the Kuwait Labour Law's statute of repose is not "unfair" and "does not deprive [plaintiffs] of a fair opportunity to sue." *Lee*, 534 F. App'x at 626–27 (applying Washington conflict of laws statute).  We note that at least two U.S. states apply a one-year statute of limitations to similar claims. *See* Ariz. Rev. Stat. § 12–541; Del. Code Ann. tit. 10, § 8111.  And if the limitations period is not itself unreasonable, that an action may be time-barred in the chosen forum does not make a forum-selection clause unreasonable, either. *See Trafigura Beheer B.V. v. M/T PROBO ELK*, 266 F. App'x 309, 312 n.4 (5th Cir. 2007) (unpublished) ("[C]onsideration of a statute of limitations would create a large loophole for the party seeking to avoid enforcement of the forum selection clause.  That party could simply postpone its cause of action until the statute of limitations has run in the chosen forum and then file its action in a more convenient forum." (quoting *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 32 (2d Cir. 1997))).

No. 15-10757

home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Weber*, 811 F.3d at 776.  These factors justify a refusal to enforce a forum-selection clause only in "truly exceptional cases." *Id.*  Barnett did not attempt to carry this "high burden of persuasion," *id.*, and the governing law and place of performance point toward Kuwait.  The district court did not abuse its discretion by dismissing this action.

## IV.

This appeal highlights a lack of clarity about the role state law plays in diversity cases involving forum-selection clauses after *Atlantic Marine* and *Stewart.*  We need not resolve that issue here, though, because Barnett has not shown that enforcement of the parties' bargained-for choices of law and forum would contravene a strong or fundamental policy of the forum state.  The judgment is AFFIRMED.[15]

---

[15] We need not discuss DynCorp's alternative arguments for affirmance.