# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 1, 2023

Lyle W. Cayce
Clerk

No. 22-20281

Noble House, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Certain Underwriters at Lloyd's, London, Subscribing to Policy MS-S 5722 (Marine Package),

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-3585

Before Higginbotham, Smith, and Engelhardt, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:

Plaintiff-appellant Noble House, L.L.C. ("Noble House") appeals a judgment of dismissal, without prejudice, based on *forum non conveniens*, granted in favor of defendant-appellee Certain Underwriters at Lloyd's, London ("Underwriters"). The district court ruled that the parties' insurance policy contained an enforceable forum-selection clause requiring litigation in the courts of England and Wales and that a return-jurisdiction clause was not required. We AFFIRM.

No. 22-20281

## I. Factual and Procedural Background

On August 20, 2018, Noble House's yacht lost its port-side rudder while entering a channel in the Bahamas. The following day, Noble House advised Underwriters, its insurer, of the casualty, which was allegedly covered by its marine-insurance policy. Noble House purchased the policy from Underwriters by way of a Texas-based insurance broker on February 1, 2018. The policy contained a forum-selection clause that selected the courts of England and Wales. Attached to the policy was a cover note with its own forum-selection clause that selected any court of competent jurisdiction within the United States. Allegedly, the cover note was not prepared by Underwriters, but by Noble House's own insurance broker.[1] Approximately two months after the casualty, on October 19, 2018, Underwriters issued a letter advising that coverage "may not exist." Underwriters has not yet denied coverage.

Noble House sued to recover its damages, first in the United States District Court for the Southern District of Florida on October 12, 2020. Months later, on March 2, 2021, that district court granted Underwriters' motion to dismiss for lack of personal jurisdiction and dismissed the case without prejudice.

Then, Noble House filed the instant suit in the United States District Court for the Southern District of Texas on November 1, 2021. Underwriters moved to dismiss on *forum non conveniens* grounds. On March 23, 2022, after hearing argument, the district court granted Underwriters' motion and dismissed all claims without prejudice. Noble House filed a motion for reconsideration, which the court denied. This appeal followed.

---

[1] At oral argument, Underwriters discussed the preparation of the cover note, which, it conceded, was a fact not in the record.

## II.  Standard of Review

Underwriters filed its motion to dismiss on *forum non conveniens* grounds, requesting that the court enforce the mandatory forum-selection clause selecting the courts of England and Wales and dismiss the action.  We apply "a mixed standard of review for post-*Atlantic Marine* [*forum non conveniens*] rulings involving [forum-selection clauses]."  *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016).  First, we review the district court's interpretation of the forum-selection clause and the court's assessment of that clause's enforceability *de novo*.  *Id.*  Second, we review the district court's balancing of the *Atlantic Marine* private- and public-interest factors for abuse of discretion.  *Id.*

## III.  The Applicable Framework

"[T]he appropriate way to enforce a forum-selection clause pointing to a … foreign forum is through the doctrine of *forum non conveniens*," *Atl. Marine*, 571 U.S. at 60, "under which a court may decline to exercise its jurisdiction and dismiss a case that is otherwise properly before it so that the case can be adjudicated in another forum."  *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073 (5th Cir. 2020).  The parties dispute which *forum non conveniens* framework applies.  "Usually, a court applying th[e] doctrine must determine whether there is an adequate alternative forum and, if so, decide which forum is best-suited to the litigation by considering a variety of private- and public-interest factors and giving deference to the plaintiff's choice of forum."  *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016) (citing *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794-95 (5th Cir. 2007)).  So, to obtain a *forum non conveniens* dismissal under this framework, "a party must demonstrate (1) the existence of an available and adequate alternative forum and (2) that the balance of relevant private and public interest factors favor dismissal."  *Vasquez v.*

*Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003) (citing *Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 221-22 (5th Cir. 2000)). It is this "usual" analysis that Noble House says controls.

But Noble House is wrong. Its reliance on *Vasquez* is misplaced. *Vasquez* and its progeny address the *forum non conveniens* inquiry where no forum-selection clause exists. As Underwriters correctly explains, the presence of a mandatory, enforceable forum-selection clause simplifies the "usual" analysis in two ways. *Barnett*, 831 F.3d at 300. "First, the plaintiff's choice of forum merits no weight" because, by contracting for a specific forum, "the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Atl. Marine*, 571 U.S. at 63. Second, the private-interest factors "weigh entirely in favor of the preselected forum"; so, the "district court may consider arguments about public-interest factors only." *Id.* at 64. "Hence, a valid forum-selection clause controls the *forum non conveniens* inquiry 'in all but the most unusual cases.'" *Barnett*, 831 F.3d at 300 (quoting *Atl. Marine*, 571 U.S. at 66) (alteration omitted). "This harmonizes with the [Supreme] Court's guidance that contractually selected forums often 'figure centrally in the parties' negotiations' and become part of those parties' 'settled expectations' – so if a plaintiff disregards such a contractual commitment, 'dismissal works no injustice.'" *Id.* (quoting *Atl. Marine*, 571 U.S. at 66 & n.8) (alterations omitted).

We apply a "strong presumption" in favor of enforcing mandatory forum-selection clauses. *Weber*, 811 F.3d at 773 (citing *Haynsworth,* 121 F.3d at 962-63). "The presumption of enforceability may be overcome, however, by a clear showing that the clause is 'unreasonable' under the circumstances." *Weber*, 811 F.3d at 773 (quoting *Haynsworth,* 121 F.3d at 963). We've stated:

> Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth*, 121 F.3d at 963 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991), and *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13, 15, 18 (1972)) (internal quotation marks omitted). "The party resisting enforcement on these grounds bears a 'heavy burden of proof.'" *Id.* (quoting *Bremen,* 407 U.S. at 17). Federal law determines the clause's enforceability. *See id.* at 962. If the forum-selection clause is both mandatory and enforceable, the court must decide whether, under *Atlantic Marine*'s balancing test, the case "is one of the rare cases in which the public-interest [*forum non conveniens*] factors favor keeping a case despite the existence of a valid and enforceable [forum-selection clause]." *Weber*, 811 F.3d at 775-76. We review the "unreasonableness" inquiry *de novo* and the *Atlantic Marine* inquiry for abuse of discretion. *Weber*, 811 F.3d at 776.

Here, although there are arguably two forum-selection clauses at play, one foreign and one domestic,[2] the district court concluded that the forum-

---

[2] Noble House's insurance policy details that: "This Insurance shall be governed by and construed in accordance with the law of England and Wales and each party agrees to submit to the exclusive jurisdiction of the courts of England and Wales." The attached cover note provides: "It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Assured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States." Importantly, the cover note states that it "is intended for use as evidence that insurance described herein has been effected against

No. 22-20281

selection clause selecting the courts of England and Wales controls. Noble House does not dispute this conclusion in its opening brief.[3] Nor does Noble House dispute that the foreign forum-selection clause is mandatory. Only the foreign forum-selection clause's enforceability is contested, which is addressed under the "unreasonable under the circumstances" framework – not the usual "available and adequate" framework.[4]

### IV. The mandatory clause is not "unreasonable under the circumstances," and is therefore enforceable.

To Noble House, the courts of England and Wales do not provide "available and adequate" fora because it fears its claims would be time-barred if litigated there.[5] So, says Noble House, the foreign forum-selection clause is "unreasonable under the circumstances" because it would be "'deprived of [its] day in court' due to a shortened statute of limitation[s] in England that would be invalid under Texas law and because enforcement of the forum selection clause would violate the public policy of Texas." Under

---

which a policy(ies) will be issued and that *in the event of any inconsistency therewith the terms and conditions and provisions of the policy(ies) prevail.*"

[3] In its reply brief, Noble House raises, for the first time, that it disputes that the foreign forum-selection clause controls. But "[a]rguments raised for the first time in a reply brief are waived." *Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (5th Cir. 2015) (citing *Unida v. Levi Strauss & Co.*, 986 F.2d 970, 976 n. 4 (5th Cir. 1993)).

[4] Even if this Court were to rely on the "available and adequate" standard, as Noble House suggests, Noble House's argument that the courts of England and Wales are not "available and adequate" fails. By contracting for those courts' exclusive jurisdiction, it necessarily agreed that such courts are available and adequate. *See Atl. Marine*, 571 U.S. at 63 (noting that a forum-selection clause "represents the parties' agreement as to the most proper forum") (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).

[5] That the statute of limitations has run is a non-jurisdictional affirmative defense, *see Flagg v. Stryker Corp.*, 819 F.3d 132, 143 (5th Cir. 2016) (Haynes, J., concurring in part), not a jurisdictional pre-requisite. Accordingly, we need not resolve whether the claims are time-barred at this juncture.

*de novo* review, Noble House does not carry its "heavy burden of proof" to show that the clause selecting the courts of England and Wales is unreasonable under the circumstances.

## A. The law does not reward a plaintiff for violating a forum-selection clause.

Noble House's fear that its claims would be time-barred under the foreign fora's statutes of limitations is not novel. Both the Supreme Court and this Court have acknowledged the risk of time-barred claims in the forum-selection-clause context. Unfortunately for Noble House, controlling caselaw affords it no sympathy.

It is no secret that dismissal under *forum non conveniens* "makes it possible for plaintiffs to lose out completely[] through the running of the statute of limitations in the forum finally deemed appropriate." *Atl. Marine*, 571 U.S. at 66 n.8 (alteration omitted). But dismissal of a suit "when the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause … work[s] no injustice on the plaintiff." *Id.* That is why we have said: "[T]hat an action may be time-barred in the chosen forum does not make a forum-selection clause unreasonable." *Barnett*, 831 F.3d at 309 n.14.

We have already considered a statute-of-limitations concern in the forum-selection-clause context. *Id.* In *Barnett*, we said that such consideration "would create a large loophole for the party seeking to avoid enforcement of the forum selection clause." *Id.* (quoting *Trafigura Beheer B.V. v. M/T PROBO ELK*, 266 F. App'x. 309, 312 n.4 (5th Cir. 2007) (per curiam) (unpublished)). That is because the plaintiff "could simply postpone its cause of action until the statute of limitations has run in the chosen forum and then file its action in a more convenient forum." *Id.* (quoting *Trafigura*, 266 F. App'x at 312 n.4). The law cannot promote such

gamesmanship. So, "absent some compelling and countervailing reason," the arms-length agreement choosing that forum-selection clause "should be honored by the parties and enforced by the courts." *Bremen*, 407 U.S. at 12; *see also Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 33 (1988) (Kennedy, J., concurring) ("[E]nforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."). Noble House offers no compelling reason justifying its filing in Texas or why its action could not be filed timely in the foreign fora. Its violation of the clause should not be rewarded. It occasioned its own predicament by failing to timely file its claim in the contractually-specified forum. *See Trafigura*, 266 F. App'x at 312. And it will be held to its bargain.

**B.    The "unreasonableness" factors weigh in favor of enforcement.**

Even if this Court's jurisprudence were sympathetic to Noble House's position, Noble House fails to show that the operative forum-selection clause is unreasonable under the circumstances and, consequently, unenforceable. Noble House's "showing" of unreasonableness is a simple insertion of a two-columned table submitted to the district court. One column lists the four factors pertinent to the unreasonableness analysis. *See Haynsworth*, 121 F.3d at 963. The other column lists alleged evidence in support of each factor. Instead of addressing the evidence in support of unreasonableness, Noble House argues that the district court's alleged failure to articulate its rationale for dismissal on the record results in an abuse of discretion. Noble House confuses the applicable standard of review at this juncture. We review *de novo* the district court's conclusion that the forum-selection clause was enforceable. *PCL*, 979 F.3d at 1073. And the record does not support that the operative forum-selection clause was unreasonable under the circumstances.

First, there is no evidence that the forum-selection clause was the product of fraud or overreaching. Noble House contends the following is evidence of fraud or overreaching: "i. placement of the forum selection clause deep within a voluminous document, ii. the lack of noticeable headers calling attention to the clause, iii. the presence of a forum selection clause selecting United States, [and] iv. [n]o endorsements or forms that supersede the forum selection clause in the Cover Note." This "evidence" falls short. To its first two points, the document is approximately 50 pages, with plenty of line and page breaks, and Noble House is presumed to have read the contract to which it agreed. To its third point, there is an express clause stating that the provisions in the policy supersede that in the cover note. And finally, to its fourth point, at the district court's hearing on Underwriters' motion to dismiss, Noble House admitted that it does not argue that the foreign forum-selection clause was fraudulently inserted.

Second, there is no evidence that Noble House will for all practical purposes be deprived of its day in court because of the grave inconvenience or unfairness of the selected forum. Noble House relies on its oft-repeated refrain that it is deprived of a remedy because its claims are time-barred due to the shorter foreign statutes of limitations. But "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*, 571 U.S. at 64. Any grave inconvenience or unfairness of the selected forum Noble House "would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting." *Bremen*, 407 U.S. at 17-18. Because the applicable foreign statutes of limitations were certainly foreseeable at the time the parties executed the policy, their enforcement is not unfair.

Moreover, "[a] chosen forum is not fundamentally unfair merely because its law is less generous than, or because the result might differ from that under, the forum state's law." *Barnett*, 831 F.3d at 308 n.14 (citing *Haynsworth*, 121 F.3d at 969). That a shorter statute of limitations applies abroad does not make the foreign fora unfair. To be sure, "American courts repeatedly have recognized [English courts] to be fair and impartial." *Haynsworth*, 121 F.3d at 967. Noble House's deprivation of a day in court is the result of a self-inflicted problem (a failure to timely file where no evidence suggests it was prevented from timely filing), not the result of a grave inconvenience or unfairness due to the fora. Aside from the running of the statute of limitations, Noble House points to no other inconvenience or unfairness.

Third, there is no evidence that the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy. Again, Noble House argues that it is deprived of a remedy "by virtue of a shortened statute of limitations permissible under English law." Noble House does not argue that there are no causes of action available under English law that would allow it to seek the same relief requested here. *See Weber*, 811 F.3d at 774. Rather, as Noble House seemingly concedes, it is its procedural error, not the underlying substantive law, that may deny it a remedy. Courts enforce a forum-selection clause unless the contracted forum accords the plaintiff *no* remedies whatsoever. *Id.* at 774 & n.24; *see also Barnett*, 831 F.3d at 308 n.14. That's because "[i]t is the *availability* of a remedy that matters, not predictions of the likelihood of a win on the merits." *Weber*, 811 F.3d at 774 (emphasis in original). Noble House's failure to point to a substantive law that bars its claim for relief is fatal.

Fourth, there is no evidence that enforcement of the forum-selection clause would contravene a strong public policy of the forum state. Noble House states that "Texas has a strong public policy of regulating insurance"

because: (1) "the public policy of the State of Texas is reflected in its statutes"; (2) there is a statute providing that insurance contracts sold to citizens or inhabitants of Texas are governed by Texas law, TEX. INS. CODE § 21.42; (3) Texas residents must consent to the transfer of a suit involving an insurance contract, TEX. INS. CODE § 982.305; (4) Texas may regulate insurance; and (5) Texas has a strong interest in protecting its citizens against "overbearing tactics of insurance underwriters." The district court found this unconvincing. So do we.

Even assuming it were true that Texas has a strong public policy of regulating insurance, this Court has already explained that the Supreme Court, "rejecting as a 'parochial concept' the idea that 'notwithstanding solemn contracts all disputes must be resolved under our laws and in our courts,' held that federal courts presumptively must enforce forum selection clauses in international [contracts]." *Haynsworth*, 121 F.3d at 962 (quoting *Bremen*, 407 U.S. at 9) (alteration in original omitted). And public policy "weighs strongly in favor" of this presumption. *Id.* Tellingly, Noble House fails to cite a case where enforcement of a forum-selection clause contravened state public policy. *Cf. id.* ("Since *The Bremen,* the [Supreme] Court has consistently followed this rule [that federal courts presumptively must enforce forum-selection clauses] and, in fact, has enforced every forum selection clause in an international contract that has come before it."). And when asked at oral argument if such a case existed, Noble House conceded that it was not aware of such a case. As the record stands, there is insufficient evidence that enforcement of the foreign forum-selection clause would contravene Texas public policy.

Noble House bears the heavy burden of establishing that a *forum non conveniens* dismissal is unwarranted. *Weber*, 811 F.3d at 767. It has not overcome our strong presumption in favor of enforcing forum-selection

clauses. *Id.* at 775. The operative forum-selection clause, then, is enforceable. The district court did not err.

**C. Noble House forfeited any argument regarding the *Atlantic Marine* factors.**

Once we find that the forum-selection clause is enforceable, as here, we then "review for abuse of discretion the district court's use of *Atlantic Marine*'s balancing test" of public-interest factors. *Weber*, 811 F.3d at 766.

Noble House does not argue that the district court misapplied the public-interest factors. In fact, absent from Noble House's briefing is any reference to the *Atlantic Marine* public-interest factors. Its failure to address the public-interest factors results in forfeiture of the argument on appeal. *See PCL*, 979 F.3d at 1074 (citing *United States v. Young*, 872 F.3d 742, 747 (5th Cir. 2017)).

**V. A return-jurisdiction clause or total waiver of any statute-of-limitations defenses is not necessary.**

Finding that the foreign forum-selection clause was enforceable, the district court dismissed the action without mention of a return-jurisdiction clause. Prior to dismissal, the court prompted Underwriters' express commitment that it would "not count the pendency of this action against any statute of limitation argument that's made in the future." Noble House contends that a "return-jurisdiction clause" was mandatory and that "a total waiver of any statute of limitations defenses [or laches defenses] is … a valid prerequisite for transfer to a foreign jurisdiction pursuant to *forum non conveniens.*" Noble House's position lacks merit.

"A return jurisdiction clause remedies th[e] concern [that the identified forum will remain available or that defendants will submit to its jurisdiction] by permitting parties to return to the dismissing court should

the lawsuit become impossible in the foreign forum." *Vasquez*, 325 F.3d at 675. "The 'failure to include a return jurisdiction clause in an f.n.c. [*i.e.*, *forum non conveniens*] dismissal constitutes a *per se* abuse of discretion.'" *Vasquez*, 325 F.3d at 675 (quoting *Robinson v. TCI/US West Communications, Inc.*, 117 F.3d 900, 907-08 (5th Cir. 1997)). "This is because, as [this] [C]ourt has repeatedly made clear, 'courts must take measures, as part of their dismissals in [*forum non conveniens*] cases, to ensure that defendants will not attempt to evade the jurisdiction of the foreign courts.'" *Rajet Aeroservicios S.A. de C.V. v. Castillo Cervantes*, 801 F. App'x 239, 244 (5th Cir. 2020) (unpublished) (per curiam) (quoting *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1551 (5th Cir. 1991)). "Such measures often include agreements between the parties to litigate in another forum, to submit to service of process in that jurisdiction, to waive the assertion of any limitations defenses, to agree to discovery, and to agree to the enforceability of the foreign judgment." *Baris*, 932 F.2d at 1551 (citations omitted). "A return-jurisdiction clause assists in preventing defendants from circumventing these measures and ensures plaintiffs have the opportunity to proceed with the action in one of the forums." *Rajet Aeroservicios*, 801 F. App'x at 244.

The existence of a mandatory, enforceable forum-selection clause swallows the purpose of a return-jurisdiction clause whole. *See Baris*, 932 F.2d at 1551. As noted, an agreement is one of the express "measures" to ensure that defendants will not attempt to evade the jurisdiction of the foreign courts. *See Baris*, 932 F.2d at 1551. By agreement, Noble House and Underwriters are contractually bound to litigate their dispute in the courts of England and Wales. Accordingly, there is no concern that Underwriters will "attempt to evade jurisdiction of the foreign courts" or flout the litigation procedure and outcome. The clause ensures that Noble House will have the opportunity to proceed with the action in the foreign fora. *See Rajet Aeroservicios*, 801 F. App'x at 244. Moreover, should Underwriters evade the

No. 22-20281

jurisdiction of the foreign courts, Noble House has a remedy in a breach-of-contract action, a protection which does not exist in the *forum non conveniens* context where there is no forum-selection clause. The parties' agreement to proceed with the action in the selected fora obviates the need for a return-jurisdiction clause. *See Baris*, 932 F.2d at 1551

A "total waiver of any statute of limitations defense" or laches defenses is similarly unnecessary. First, while such a waiver is one of the many "measures" provided to "ensure" that defendants will not evade the jurisdiction of foreign courts, none of those measures is mandatory. *See id.* (listing examples of protective measures that a court may often – but not "must" – utilize). Again, the primary concern that a defendant will evade jurisdiction is not present where the parties willingly submitted to foreign fora by agreement. So, waiver as a protective measure is redundant, gratuitous, and serves no purpose. Although not required, the district court confirmed that Underwriters' statute-of-limitations defense did not encompass the time period including "the duration of the pendency of this action." This exceeds what was expected of the court to ensure Underwriters would not "evade" jurisdiction. Accordingly, the district court did not err.

## VI. Conclusion

For the foregoing reasons, the district court did not err when it: (1) concluded that the foreign forum-selection clause is enforceable; or (2) failed to include a return-jurisdiction clause and total waiver of any statute-of-limitations defenses. We AFFIRM the district court's judgment of dismissal.

14