# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 13, 2023

Lyle W. Cayce
Clerk

_____

No. 23-20066

_____

Ralph Eads; Princess Alia, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

Spheric Assurance Company, Limited,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-4021

_____

Before Smith, Graves, and Wilson, *Circuit Judges*.

Per Curiam:[*]

The yacht *Princess Alia* was destroyed by fire in 2021, and this action arises from the ensuing insurance coverage dispute. Plaintiffs-Appellants Ralph Eads and Princess Alia, L.L.C. (Alia) sued in Texas state court hoping to take advantage of that state's comparatively favorable insurance laws. Defendant-Appellee Spheric Assurance Company (Spheric) removed the action to federal court and then sought to enforce a forum selection clause in

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

the relevant insurance contract, which designated the British Virgin Islands as the appropriate forum. The district court sided with Spheric and dismissed the case with leave to refile in the British Virgin Islands. Eads and Alia now appeal, contending that it would be unreasonable to enforce the forum selection clause because it is contrary to Texas public policy. This argument faced choppy waters navigating our precedent from the start, but it became foreclosed by *Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243 (5th Cir. 2023), which this court published while this appeal was being briefed. We AFFIRM.

## I.

The *Princess Alia* was a 62-foot, Jamaican flagged yacht that was destroyed by fire in 2021 while harboring in Cabo San Lucas, Mexico. Eads owned the *Princess Alia* through his company Princess Alia, L.L.C., of which he is the sole member. Prior to the yacht's destruction, Spheric issued an insurance policy (the Policy) to Eads and Alia.

The Policy covered all risks of physical loss or damage for the *Princess Alia*, but it also included several warranties that Eads and Alia were required to meet. The Policy further included a combined forum selection clause and choice of law provision:

> This Contract shall be governed by and construed in accordance with the laws of the British Virgin Islands and each party agrees to submit to the exclusive jurisdiction of the Courts of the British Virgin Islands.

Both Plaintiffs are Texans, and they obtained the Policy through Spheric's agent in Texas. Spheric is incorporated in the British Virgin Islands.

When Eads and Alia submitted a claim under the Policy, Spheric denied coverage, citing various warranty violations and a lack of clarity as to the cause of the fire. Plaintiffs then filed suit against Spheric, alleging claims

No. 23-20066

for breach of contract, bad faith, and unfair settlement practices. Spheric removed the state court action to federal court and then filed a motion to dismiss for *forum non conveniens* pursuant to the Policy's forum selection clause. Plaintiffs opposed the motion on public policy grounds, contending that British Virgin Islands law would allow Spheric to evade its alleged coverage obligations based on immaterial warranty violations, while Texas law would not. The district court granted the motion to dismiss and afforded Plaintiffs leave to refile in the British Virgin Islands. This appeal followed.

## II.

"[T]he appropriate way to enforce a [forum selection] clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). "When reviewing *forum non conveniens* rulings involving forum selection clauses, '[w]e review *de novo* the district court's conclusions that the [forum selection clause] was mandatory and enforceable.'" *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073 (5th Cir. 2020) (alterations original) (quoting *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766 (5th Cir. 2016)).

"We apply a 'strong presumption' in favor of enforcing mandatory [forum selection] clauses." *Noble House*, 67 F.4th at 248 (quoting *Weber*, 811 F.3d at 773). "The presumption of enforceability may be overcome, however, by a clear showing that the clause is 'unreasonable' under the circumstances." *Id.* (quoting *Weber*, 811 F.3d at 773). As our precedent explains:

> Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave

No. 23-20066

inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (first quoting *M/S Bremen v. Zapata Off-Shore Co.* (*The Bremen*), 407 U.S. 1, 18 (1972); then citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); and then citing *The Bremen*, 407 U.S. at 12–13, 15).  However, a party "resisting enforcement on these grounds bears a 'heavy burden of proof.'" *Haynsworth*, 121 F.3d at 963 (quoting *The Bremen*, 407 U.S. at 17).  "Federal law applies to determine the enforceability of forum selection clauses in diversity cases." *PCL Civ. Constructors*, 979 F.3d at 1074 (citing *All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008)).

## III.

Eads and Alia challenge the enforceability of the insurance contract's forum selection clause only on public policy grounds, the fourth unreasonableness factor.[1]  This sole issue before the court—whether Texas public policy allows enforcement of a forum selection clause mandating a jurisdiction with purportedly less favorable insurance laws—has already been

---

[1] Plaintiffs spend much of their briefing discussing choice of law issues.  However, choice of law issues play no role in the *enforceability* questions presented here.  Our precedent is clear that "[f]ederal law applies to determine the enforceability of forum selection clauses in diversity cases." *PCL Civ. Constructors*, 979 F.3d at 1074 (citing *All. Health Grp.*, 553 F.3d at 399).  By comparison, if Plaintiffs challenged the *interpretation* of the forum selection clause, i.e., whether it is mandatory or permissive, then we would conduct a choice of law analysis—including of the insurance contract's choice of law provision—to determine which substantive law governed the contract's construction. *See, e.g.*, *Weber*, 811 F.3d at 768–73.  Because it is not necessary to reach these issues, we withhold judgment on any choice of law questions in this dispute.

No. 23-20066

decided in the affirmative. *Noble House*, 67 F.4th at 254.[2]   Further, to the extent *Noble House* is not perfectly analogous, Plaintiffs nonetheless fail to carry their "heavy burden of proof" to resist enforcement of the forum selection clause. *Haynsworth*, 121 F.3d at 963 (quoting *The Bremen*, 407 U.S. at 17).

## A.

In *Noble House*, the plaintiff purchased an insurance policy for a yacht from the defendant, Certain Underwriters at Lloyd's, London. 67 F.4th at 247. Noble House, L.L.C. obtained the insurance policy through a Texas-based insurance broker, and the policy included a mandatory forum selection clause that selected the courts of England and Wales. *Id.* When the yacht lost its port rudder while at sea, Noble House, L.L.C. filed a claim with Lloyd's, which spurred years of litigation. *Id.* Most relevantly, a district court in Texas eventually dismissed the action on *forum non conveniens* grounds because of the forum selection clause. *Id.* On appeal, the plaintiff pointed out that its claims might be time-barred in England or Wales; it thus argued that enforcement of the forum selection clause would be unreasonable. *Id.* at 249–52. We rejected that argument, explaining that controlling law affords no sympathy for a litigant on the wrong end of a forum selection clause, even when that party will be left to sue in a forum that effectively dooms its case. *Id.* at 250, 254.

We also specifically discounted Noble House, L.L.C.'s arguments on the fourth unreasonableness factor, regarding Texas's public policy. *Id.* at

---

[2] Even though *Noble House* had not been decided at the time the district court rendered its decision or when Eads and Alia submitted their opening brief, both sides have since had the opportunity to address *Noble House* in their briefing.

No. 23-20066

252.    On this point, Noble House, L.L.C. argued, unpersuasively, that "Texas has a strong public policy of regulating insurance" because:

> (1) "the public policy of the State of Texas is reflected in its statutes"; (2) there is a statute providing that insurance contracts sold to citizens or inhabitants of Texas are governed by Texas law, TEX. INS. CODE [art.] 21.42; (3) Texas residents must consent to the transfer of a suit involving an insurance contract, TEX. INS. CODE § 982.305; (4) Texas may regulate insurance; and (5) Texas has a strong interest in protecting its citizens against "overbearing tactics of insurance underwriters."

*Id.*

Eads and Alia advance nearly identical arguments, emphasizing article 21.42 and their concern about the "overbearing tactics of insurance underwriters." So the reasoning of *Noble House* is especially apt:

> Even assuming it were true that Texas has a strong public policy of regulating insurance, this [c]ourt has already explained that the Supreme Court, "rejecting as a parochial concept the idea that notwithstanding solemn contracts all disputes must be resolved under our laws and in our courts, held that federal courts presumptively must enforce forum selection clauses in international [contracts]." And public policy "weighs strongly in favor" of this presumption.

*Id.* (second alteration original) (quoting *Haynsworth*, 121 F.3d at 962). In short, *Noble House* instructs that it is reasonable to enforce a forum selection clause even if Texas has a strong public policy of regulating insurance.

This determination, coupled with the fact that the *Noble House* plaintiff failed to identify a case where enforcement of a forum selection clause was found unreasonably to contravene state public policy, ultimately resolved that appeal. *Id.* Because the same principles apply here, *Noble House*

6

No. 23-20066

controls, and the district court correctly dismissed this action on grounds of *forum non conveniens*.

## B.

Eads and Alia contend that the issues presented here are distinguishable and remain open questions. But while there are two potential differences between *Noble House* and the instant action, both are immaterial. And even if *Noble House* did not control, Plaintiffs still fail to carry their burden.

First, *Noble House* involved Texas Insurance Code § 982.305, while Eads and Alia emphasize Texas Insurance Code § 862.054. *See* 67 F.4th at 252. And as we have previously recognized, albeit in an unpublished opinion, § 862.054 articulates a Texas public policy against denials of insurance coverage based on technicalities. *Santacruz v. Allstate Texas Lloyd's, Inc.*, 590 F. App'x 384, 387 (5th Cir. 2014) (per curiam) (citing Tex. Ins. Code § 862.054; *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984)). This arguably presents a conflict between Texas public policy favoring enforcement of contracts and Texas public policy against denials of insurance coverage based on technicalities. But nothing in *Noble House* suggests the panel's decision would have changed if Noble House, L.L.C. had only cited a different section of the Texas Insurance Code. In fact, as discussed above, *Noble House* addressed competing Texas public policies and still sided in favor of enforcing the forum selection clause. 67 F.4th at 252.

Second, Eads and Alia point to the purportedly undisputed evidence of their grim legal future in the British Virgin Islands should this action be sent there, drawn from a declaration of a British Virgin Islands lawyer who offers his opinion of how Plaintiffs' case would fare in that venue. However, though *Noble House* lacked such evidence, the court made clear that its

conclusion would not change even where a forum selection clause relegated the plaintiff to a dead-end forum. *Id.* at 250, 252.

Regardless, assuming *arguendo* that *Noble House* were distinguishable, there remains "quite a high burden of persuasion on the party seeking to avoid enforcement of the [forum selection clause]." *Weber*, 811 F.3d at 776. This burden is especially onerous given the "presumption of enforceability" for mandatory forum selection clauses. *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016). Plaintiffs have not met it. At best, Eads and Alia have established that they could be disadvantaged by the forum selection clause, but they have not shown that this action presents "the sort of exceptional circumstance that justifies disregarding the parties' agreement on public-interest-factor grounds." *Weber*, 811 F.3d at 776. Indeed, they fail to cite a case that aligns with their position, and their cited precedent actually supports dismissal.

Plaintiffs' most developed argument regarding Texas public policy rests on *In re AutoNation, Inc.*, 228 S.W.3d 663 (Tex. 2007). In *AutoNation*, the Supreme Court of Texas considered a writ of mandamus and reversed a trial court for abuse of discretion, directing it to enforce a forum selection clause. 228 S.W.3d at 670. So the case is hardly a safe harbor in which to anchor Plaintiffs' arguments. The Supreme Court of Texas further observed that based on its "controlling precedents on [forum selection] clauses, the parties' bargained-for agreement merits judicial respect." *Id.* at 669. Nevertheless, Eads and Alia point to a concurrence in *AutoNation* which left open the possibility that a forum selection clause might not be enforced upon a "clear showing" that it would undermine the forum state's public policy. *Id.* at 671 (O'Neill, J., concurring). That concurrence was later cited for a similar proposition in *In re Lyon Financial Services, Inc.*, 257 S.W.3d 228, 234–35 (Tex. 2008). But the ultimate disposition in *Lyon Financial Services*, like in *AutoNation*, reversed a trial court on a writ of mandamus for abuse of

discretion and directed the court to enforce the disputed forum selection clause and dismiss the suit. *Id.* at 235.

In short, Texas law may leave open some avenue for disregarding a forum selection clause on public policy grounds, but the Supreme Court of Texas declined explicit invitations to do so in both *AutoNation* and *Lyon Financial Services*, even on highly deferential standards of review. *AutoNation*, 228 S.W.3d at 670; *Lyon Fin. Servs.*, 257 S.W.3d at 234–35. And given that Eads and Alia fail to cite a case that actually sets aside a forum selection clause on public policy grounds, they apparently ask us to do so for the first time. Like the Supreme Court of Texas, we decline that invitation.[3]

## IV.

This action properly belongs in the British Virgin Islands, the forum agreed to by the parties in the Policy, and Spheric's place of incorporation. Because the district court's decision aligns with *Noble House*, the court correctly enforced the forum selection clause in the Policy. Moreover, Eads and Alia fail to establish that it would be unreasonable to enforce the forum selection clause in the face of Texas public policy. Accordingly, the district court's decision to dismiss this case with leave to refile in the British Virgin Islands is AFFIRMED.

---

[3] As a last point, the Supreme Court has granted certiorari this term in a case about non-enforcement of a choice of law provision in a marine insurance contract based on strong public policy grounds. *See Great Lakes Ins. SE v. Raiders Retreat Realty Co.*, 47 F.4th 225 (3d Cir. 2022), *cert. granted in part*, 143 S. Ct. 999 (2023). While *Great Lakes* involves admiralty law, both sides agree that its decision could impact this action. Nevertheless, our precedent on this topic is clear. So there is no need to hold this case in abeyance pending the Supreme Court's decision in *Great Lakes*.